James E. GARRETT, Social Security
No. 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 *v.* Dale CLINE,
Director of Labor

74-312                    520 S.W. 2d 281

Opinion delivered March 17, 1975

*Shaw & Ledbetter*, for appellant.

*Herrn Northcutt*, for appellee.

J. FRED JONES, Justice. This is an appeal by James E. Garrett from a circuit court judgment sustaining a decision of the Arkansas Employment Security Division Board of Review, which denied appellant Garrett's claim for benefits under the Arkansas Employment Security Act [Ark. Stat. Ann. § 81-1101 et seq. (Supp. 1973)].

The facts are not in dispute in this case and only a question of law is involved. The facts are these: Mr. Garrett sustained an industrial injury on August 17, 1971, while in the employment of Delrod Enterprises. The injury was compen-

sable under the Arkansas Workmen's Compensation Law and he was paid workmen's compensation benefits during the course of his temporary disability extending from the date of his injury on August 17, 1971, through June 7, 1973, when he was released from further medical treatment. On June 19, 1973, Mr. Garrett was awarded some permanent partial disability under the Workmen's Compensation Law as a result of his injury.

The evidence indicates that in June, 1973, Mr. Garrett notified his former employer that he had been released by the doctors as able to return to his regular employment and that he was available and physically able to return and perform the work he had previously done. When Mr. Garrett was not put back to work by his former employer, he filed the claim here involved for unemployment benefits and the claim was denied upon the basis that during his base period, April 1, 1972, through March 31, 1973, he received no wages and performed no personal services within the meaning of the Arkanaas Employment Security Act. The circuit court affirmed and on his appeal to this court Mr. Garrett has designated the point he relies on for reversal as follows:

"The trial court was in error in denying claims for benefits under the Arkansas Employment Security Act to an individual who left his last employment because of injury and disability."

The question of law involved is broader than the mere question of disqualification from receiving benefits under the Act. The question involved in this case is whether Mr. Garrett was eligible for benefits under the Act and, if so, whether he was disqualified from receiving benefits under the Act. Apparently the decision of both the Appeals Referee and the Board of Review was based on the proposition that during the required base period from April 1, 1972, through March 31, 1973, Mr. Garrett received no wages since he performed no personal services and he was thus ineligible for benefits under § 2 (n) of the Employment Security Act, which defines wages as "All remuneration paid for personal services."

It was apparently Mr. Garrett's contention before the

Referee and Appeals Board, that the workmen's compensation benefits he received during the period of his disability constituted, and should be considered as, "wages" in so far as wages apply to the required base period and, that Mr. Garrett was entitled to benefits under § 81-1106 (a) which provides that no worker shall be disqualified for benefits who was required to leave his work because of illness, injury or disability.

Mr. Garrett correctly points out in his brief that in construing a statute, every effort must be made to give effect to the legislative purpose in enacting the statute and that strict and literal meaning of any section of a statute ought not to prevail where it is opposed to the intention of the Legislature; that the Arkansas Employment Security Act is remedial in nature and must be liberally construed in order to accomplish its beneficent purpose and, he argues that in accomplishing the legislative purpose in the cases here involved, the judgment of the circuit court should be reversed. Mr. Garrett then complains that the trial court, in denying benefits, applied a very strict construction to the statutory definition of wages (§ 2 [n] of the Act) and construed the term to mean "all remuneration paid for personal services." He argues that this interpretation is not only against the express legislative intent to provide compensation to individuals who are involuntarily unemployed, but is in direct contravention of § 5 (a) of the Act, Ark. Stat. Ann. § 81-1106 (a) (Supp. 1973), which provides that:

". . . no individual shall be disqualified . . . if after making reasonable effort to preserve his job rights, *he left his last work because of illness, injury or disability.*" (Appellant's emphasis).

He argues that even under strict construction of the statute an ambiguity would still be apparent because the legislative intent is clearly set forth in the Act to be " . . . for the benefit of persons unemployed through no fault of their own." Citing Ark. Stat. Ann. § 81-1101 (Repl. 1960). The appellant then argues that the express legislative intent when coupled with § 5 (a) of the Act clearly shows that no individual could be more entitled to benefits than the appellant — involuntarily

unemployed because of severe injuries he sustained while on the job.

The appellant then points out what he considers to be discriminatory and inequitable results permissible under the statute as interpreted by the trial court and argues that a claimant who suffers injuries in the course of his employment which render him totally disabled for a period of only nine months, could qualify for unemployment benefits; whereas, a claimant who suffered a more severe injury and becomes totally disabled for a period of 22 months, would not be eligible for unemployment compensation because he received no "wages" during his "base period."

We are not unsympathetic to the appellant's view as to this apparent unequitable result and we agree that legislative intent should be considered in statutory construction where the legislative intent is important to the decision and is unclear. We are of the opinion, however, that the appellant may have confused his *eligibility* under the Act with his *disqualifications* to receive benefits, but we are of the opinion that the Legislature did not share that confusion. As to liberal interpretation to accomplish the legislative intent, in 76 Am. Jur. 2d, § 6, at p. 880, is found the following language:

> "[I]n the liberal construction to be accorded an unemployment insurance statute so as to afford all the relief that its language indicates the legislature intended to grant, the interpretation should not exceed the limits of the statutory intent. Similarly, a court is not at liberty to read into the statute provisions which the legislature did not see fit to incorporate, nor may it enlarge the scope of its provisions by an unwarranted interpretation of the language used."

In 76 Am. Jur. 2d, § 32, at p. 916, is found the following:

> "The purpose of the eligibility and disqualification provisions of an unemployment compensation statute is to protect the state unemployment compensation fund against claims of individuals who would prefer benefits to jobs. The eligibility and disqualification provisions,

being in pari materia, are to be construed together. Some acts provide that no employee is entitled to benefits unless he is suffering total unemployment as defined therein, and unless wages amounting to a specified sum have been paid to him within his base year, and unless he has registered as unemployed and reported for work as required by the act, is not customarily 'self-employed,' and has not been discharged for certain specified reasons. With respect to the issue of whether an individual has earned sufficient wages in a given period to qualify for unemployment compensation benefits, it has been held that wages actually paid, rather than wages earned, within a statutory base period control eligibility for unemployment benefits."

Ark. Stat. Ann. § 81-1105 (Repl. 1960 and Supp. 1973), as it applies to the question here involved, provides as follows:

"An insured worker shall be eligible to receive benefits with respect to any week only if the Commissioner finds that— * * *

(e) He has during his base period been paid wages for insured work equal to not less than thirty [30] times his weekly benefit amount and has wages for insured work in at least two [2] quarters of his base period."

Ark. Stat. Ann. § 81-1103 (Supp. 1973) provides as follows:

" * * *

(a) On and after July 1, 1972, 'Base Period' means the first four (4) of the last five (5) completed calendar quarters immediately preceding the first day of the benefit year. . . .

(c) On and after July 1, 1972 'benefit year' with respect to any individual means the twelve (12) consecutive month period beginning the first day of the calendar quarter in which he first files a valid claim for benefits in accordance with Arkansas Statutes. . . . "

Ark. Stat. Ann. § 81-1104 (Supp. 1973) provides as follows:

"(b) For all benefit years beginning on and after July 1, 1971, an insured worker's weekly benefit amount shall be an amount equal to one-twenty-sixth [1/26] of his total wages for insured wor'; paid during that quarter of his base period in which such wages were highest.
No weekly benefit amount shall be less than $15.00.
No maximum weekly benefit amount shall be greater than: Sixty per cent [60%] of the State average weekly wage for insured employment for the calendar year 1970, effective for benefit years beginning July 1, 1971 through June 30, 1972. Sixty per cent [60%] of the State average weekly wage for insured employment for the calendar year 1970, effective for benefit years beginning July 1, 1972 through June 30, 1973. Sixty-six and two-thirds per cent [66 2/3] of the State average weekly wage for insured employment for the previous calendar year for benefit years beginning July 1, 1973 and on each July 1 thereafter.

Weekly benefit amounts which are not in even multiples of one dollar [$1.00] shall be computed to the next higher multiple of one dollar [$1.00].
On the first day of June of each year the Commissioner shall determine the average weekly wage of the preceding calendar year in the following manner:

(1) The sum of the total monthly employment reported for the calendar year be divided by twelve [12] to determine the average monthly employment.

(2) The sum of the total wages reported for the previous calendar year shall be divided by the average monthly employment to determine the average annual wage.

(3) The average annual wage shall be divided by 52 to determine the average weekly wage.

(c) For all claims filed on and after July 1, 1971, any insured worker who is unemployed in any week as defined in Section 2 (m) [§ 81-1103 (m)] *and who meets the eligibility requirements of Section 4 [§ 81-1105]* shall be paid with respect to such week an amount equal to his weekly

benefit amount less that part of the remuneration (if any) payable to him with respect to such week which is in excess of forty (40) per cent of his weekly benefit amount. * * *" (Emphasis added).

In 81 C.J.S. § 106, p. 156, is found the following:

"In order to be eligible to receive unemployment compensation, the worker must have earned or received wages in the amount required by statute during the base period for the year in which he claims benefits. Thus there is no right to compensation for unemployment unless, within the statutory base period, remuneration to the amount stated has been earned, including only wages with respect to which contributions have been paid or are payable."

And again in 81 C.J.S. § 246, p. 360, is found the following:

"Under the various unemployment compensation statutes the payment of benefits during a benefit year is dependent on earnings within the base year, and an employee is not entitled to benefits if he is without qualifying wages in the applicable base year. Where claimant has qualifying wages in one base year to justify the payment of compensation in the applicable benefit year following, but he fails to file his claim in time for such benefit year, the base year in which qualifying wages have been earned may not, in the absence of statutory authorization, be used to justify an award of benefits for a subsequent benefit year. In determining to which quarter of the base year wages are to be allocated, the actual date when wages are paid pursuant to a definitely assigned pay roll period controls rather than when such wages are earned."

Mr. Garrett had not received wages for work performed for almost two years when he filed his claim on July 5, 1973, and his contention is predicated upon Ark. Stat. Ann. § 81-1006 (Supp. 1973) which provides as follows:

"For all claims filed on and after July 1, 1973, if so found by the Commissioner, an individual shall be disqualified for benefits.

(a) If he voluntarily and without good cause connected with the work, left his last work. Such disqualification shall continue until, subsequent to filing his claim, he has had at least 30 days of paid work.

Provided no individual shall be disqualified under this subsection if, after making reasonable efforts to preserve his job rights, he left his last work due to a personal emergency . . . or, if after making reasonable efforts to preserve his job rights, he left his last work because of his illness, injury or disability."

Then follow other exceptions such as one spouse following the other to a new living area and a wife voluntarily leaving her employment due to pregnancy. Under succeeding subsections a claimant worker may be disqualified if he is discharged because of misconduct in connection with his work and failing to accept available suitable work when offered, etc.

Of all the exceptions made and recited in the Employment Security Act, including § 81-1105 (f) pertaining to loss of employment "by reason of a labor dispute other than a lockout . . .," physical disability even under the Workmen's Compensation Law when it extends over and beyond a base period, is not among the exceptions made by the Legislature, and we are unable to read such exception into the provisions of the Act.

We are of the opinion, and so hold, that Mr. Garrett was not eligible for benefits under the Act, consequently, we do not reach the question of whether he was disqualified from receiving benefits because of his extended disability.

The judgment is affirmed.