The Honorable Mike Everett State Senator 412 Broadway Marked Tree, Arkansas 72365
Dear Senator Everett:
This letter is a response to your request for an opinion regarding Act 1213 of 1995. That act amends the statutes governing the licensure of (and other matters relating to) private career schools. You indicate that your interest in the act concerns its impact upon the Legal Secretary's Association, which would like to conduct an educational seminar for legal secretaries. If the act applies to the Legal Secretary's Association, the Association would be required to charge an exorbitant registration fee for the course. You state that the course is offered to the public once a year, that the attendees are charged a fee for the course, but that the Association does not realize any profit as a result of offering the course. You have presented the following question:
Is the Legal Secretary's Association governed by Act 1213 of 1995?
It is my opinion that the Legal Secretary's Association is not governed by Act 1213 of 1995.
I have reached this conclusion by applying various of the Arkansas Supreme Court's rules of statutory interpretation. The primary goal of statutory interpretation is to ascertain and give effect to the intent of the legislature. McCoy v. Walker, 317 Ark. 86, 876 S.W.2d 252 (1994). In determining legislative intent, it is appropriate to consider not only the language of the statute, but also the subject matter, the object to be accomplished, the purpose to be served, the underlying policies, the remedies provided, and the consequences of various interpretation. Kiferv. Liberty Mut. Ins. Co., 777 F.2d 1325 (8th Cir. 1985). Moreover, where the literal meaning of the language of a statute conflicts with the obvious legislative intent, a literal reading is inappropriate, and the legislative intent must prevail. Garrett v. Cline, 257 Ark. 829,520 S.W.2d 281 (1975).
In my opinion, the legislature intended the act to govern organizations whose primary purpose is to offer training. This intent can be ascertained by reference to several sources. First, it can be ascertained by reference to the act's own statement of legislative intent. That statement is as follows:
6-51-601. Legislative intent.
(a) The General Assembly is aware of the fact that:
 (1) Many private career schools offering resident or correspondence programs in the State of Arkansas have contributed extensively to the well-being of the individuals and the business and industrial establishments which have benefited from such training; and
 (2) There is a need for protection of the consumer and the ethical private career school operator.
 (b) The General Assembly determines that the establishment of reasonable standards and licensing requirements for resident or correspondence schools, their program offerings and their instructors, and admissions representatives in the manner provided in this chapter is essential in the public interest and in furtherance of the purposes stated above.
The language used in this statement of legislative intent, while not conclusive, certainly points toward a conclusion that the legislature was contemplating the regulation of full-time schools. The requirement of licensure and regulation and the need to protect consumers are elements not normally present with trade associations such as the Legal Secretary's Association, which offer training only incidentally.
Second, the legislative intent can be ascertained by reference to the emergency clause contained in the act. That clause states:
 SECTION 6. EMERGENCY. It is hereby found and determined by the General Assembly that minimum standards must be provided for the operation of all schools offering programs of study to residents of the State of Arkansas; that there will continue to be a need to provide adequate protection and safeguards for reputable private career school operators and the public; that such provision should be enacted immediately; and that this act would so provide. Therefore an emergency is hereby declared to exist and this act being necessary for the preservation of the public peace, health and safety shall be in full force and effect from and after its passage and approval.
Again, the language used in this clause, with its reference to "programs of study" and the protection of reputable school operators and of the public, reflects a contemplation of the regulation of full-time schools, rather than of organizations whose training offerings are incidental to their primary purpose, and with whom "protection" is not an issue.
Third, the legislative intent behind Act 1213 can be ascertained by reference to the types of regulations that it imposes. It requires licensure for the operation of schools. It imposes a penalty for operation without a license. It sets forth a procedure for suspending a school's license. It imposes specific requirements for persons who recruit students for the schools governed by the act. It requires the posting of a bond by the schools. It sets forth a means of addressing student grievances. These are all regulations that have meaning in the context of an organization whose primary purpose is to offer training. They are regulations that would be virtually superfluous if applied to an organization whose offering of training is incidental to its primary purpose. If applied to such organizations, these regulations would be providing unneeded protection.
Fourth, the legislative intent can be ascertained by reference to the types of organizations that are explicitly exempted from its governance. The organizations that are listed as exempt are, generally, public educational organizations, organizations offering highly specialized training, regulated organizations, and organizations whose offering of training is not the primary purpose of the organization. Although not explicitly listed as exempt, trade organizations, such as the Legal Secretary's Association, that offer occasional individual courses for a fee are of the same type and general category as the final exempt category mentioned above. It would be unreasonable to read the act to govern these organizations when it exempts like ones.
Finally, the legislative intent of Act 1213 of 1995 can be ascertained by reference to the title and subtitle of the act. The title of the act states: "An Act To Amend Subchapter 6 Of Chapter 51 Of Title 6 Of the Arkansas Code Relating To the Licensure and Regulation Of Private Resident and Correspondence Schools; and For Other Purposes." Similarly, the subtitle of the act states: "Licensure and Regulation Of Private Resident and Correspondence Schools." The ordinary meaning of the language used in this title and subtitle carries an obvious connotation that the act will apply to full-time schools.
Although it is true that the Legal Secretary's Association technically fits within the literal meaning of the words used in the act's definition of the term "school," a reading of that term which encompasses organizations such as the Legal Secretary's Association would tend to defeat what appears to be the intent of the legislature in enacting Act 1213. Such a reading would therefore be inappropriate. Garrett, supra.
I therefore conclude that Act 1213 of 1995 does not govern the Legal Secretary's Association.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh