The Honorable Morril Harriman, Chair Legislative Auditing Committee, Division of Legislative Audit 172 State Capitol Little Rock, Arkansas 72201-1099
Dear Senator Harriman:
This opinion is being issued in response to your recent inquiry regarding various issues relating to delinquent tax penalties. You have presented the following questions:
 (1)(a) If a taxpayer fails to pay real estate taxes by October 10, but pays those taxes at the county level before the land is transferred to the State Land Commissioner, what is the proper percentage of penalty(ies) that the collector must collect, and under what Code provision(s)?
 (1)(b) Please note that A.C.A. §§ 26-36-201, 26-36-202, and 26-37-302
all appear to place a 10% penalty on delinquent real estate tax. Should any or all of these penalties be collected?
 (2) For the situation described in Question (1)(a), what is the proper distribution of the delinquent real estate tax penalty, and under what Code provision(s) (A.C.A. § 21-6-310; 26-37-205(d); or other)?
 (3)(a) Would the situation described in Question (1)(a) be considered a "redemption at the county level"?
 (3)(b) If so, must the county issue a redemption certificate and charge the $2.50 redemption fee described in A.C.A. § 26-37-109(a)(1)?
RESPONSE
Question 1(a) — If a taxpayer fails to pay real estate taxes by October10, but pays those taxes at the county level before the land istransferred to the State Land Commissioner, what is the proper percentageof penalty(ies) that the collector must collect, and under what Codeprovision(s)?
It is my opinion that under the scenario described in Question 1, the collector must collect one[1] 10 percent penalty for the delinquent taxes. (In addition, the collector must collect interest at the rate of 10 percent per year, and other costs and fees.)
This scenario, in my opinion, would be governed primarily by the provisions of A.C.A. §§ 26-37-101, 26-37-109, and 26-37-302.[2]
A.C.A. § 26-37-109 explicitly authorizes the payment of delinquent real estate taxes at the county level. It states:
 Each county quorum court may authorize the county collector or the county treasurer to accept payment for the redemption of tax-delinquent land which has not been transferred to the Commissioner of State Lands.
A.C.A. § 26-37-109. It is significant that the payment of delinquent real estate taxes at the county level is referred to in the quoted statute (and in the other applicable statutes, see, e.g., A.C.A. § 26-37-101(b), A.C.A. § 26-36-302(a)), as a "redemption."[3]
A.C.A. § 26-37-101 provides that redemption of tax-delinquent property can take place at the county level within a specified time period after the delinquency. It states:
 The county collector shall hold all tax-delinquent lands in the county for one (1) year after the date of delinquency, and, if the lands are not redeemed by the certification date, which shall be no later than July 1 of the following year, the collector shall transmit it to the state by certification, after notice as provided in this chapter, indicating all taxes, penalties, interest, and costs due and the name and last known address of the owner of record of the tax-delinquent lands.
A.C.A. § 26-37-101(b).
If delinquent property is redeemed at the county level, as authorized by A.C.A. §§ 26-37-101 and -109 (or if it is redeemed at the state level), the amounts that must be paid in connection with the redemption are governed by A.C.A. § 26-37-302, which states:
 (a) In order to redeem, whether with the county collector or the Commissioner of State Lands, . . . the redeemer . . . of tax-delinquent land shall pay all delinquent taxes, plus:
(1) Ten percent (10%) simple interest for each year of delinquency;
(2) A ten percent (10%) penalty for each year of the delinquency; and
 (3) The costs incurred by the county and the Commissioner of State Lands.
A.C.A. § 26-36-302(a).
On the basis of the foregoing unambiguous statutory provisions, I conclude that under the scenario described in Question 1(a), where a taxpayer fails to pay real estate taxes by October 10, but pays those taxes at the county level before the land is transferred to the State Land Commissioner, the percentage penalty that must be collected is 10 percent, pursuant to A.C.A. § 26-37-302(a).
Question 1(b) — Please note that A.C.A. §§ 26-36-201, 26-36-202, and26-37-302 all appear to place a 10% penalty on delinquent real estatetax. Should any or all of these penalties be collected?
It is my opinion that the provisions of A.C.A. §§ 26-36-201, 26-36-202, and 26-37-302 all refer to one required 10 percent penalty on delinquent taxes. It is my opinion that they do not impose separate penalties for the same delinquent tax. Rather, they simply address various issues related to the same penalty, and various scenarios in which it may be imposed.[4]
I base this conclusion on several principles of statutory interpretation that are applicable in Arkansas. One such principle is the principle under which the legislature is presumed to have enacted legislation with full knowledge of existing laws addressing the same subject, and to have passed the later law in harmony with the policy embodied in the earlier one. Jones Truck Lines v. AFCO Steel, 849 F. Supp. 1296 (E.D. Ark. 1994). Another principle of statutory interpretation upon which I base my conclusion is the principle under which different statutes addressing the same subject must be read in light of one another, toward a goal of reconciling them in a manner that is sensible and that gives effect to the legislature's intent as to the whole subject. Fitch v. State,313 Ark. 122, 853 S.W.2d 874 (1993); Matter of Estate of Epperson,284 Ark. 35, 679 S.W.2d 792 (1984). Finally, I have relied upon the principle of statutory interpretation under which a literal reading of the statutes under consideration is inappropriate if such a reading would produce absurd consequences or would produce a result that is demonstrably at odds with the legislative intent — particularly where an alternative interpretation would effect the legislature's purpose. Ashley, Drew Northern Ry. Co. v. United Transp. Union, 625 F.2d 1357 (8th Cir. 1980);In re Jones Truck Lines, 172 B.R. 602 (W.D. Ark. 1994); Stover v.Stover, 287 Ark. 116, 696 S.W.2d 750 (1985); Hice v. State, 268 Ark. 57,593 S.W.2d 169 (1980); Garrett v. Cline, 257 Ark. 829, 520 S.W.2d 281
(1975).
The legislature enacted A.C.A. § 26-37-302 as a part of Act 626 of 1983. Under the principles of statutory interpretation described above, I am required to presume that the legislature did so with full knowledge of the existence of A.C.A. §§ 26-36-201 and -202, which had been in effect since 1935 and 1883, respectively. I must further read the three statutes in light of one another, reconciling the three toward a goal of giving effect to the legislative intent as to the entire subject of delinquency penalties. Nothing in any of these three statutes reflects an intent that delinquent taxpayers be required to pay multiple penalties on the same tax. Each appears to envision only the penalty mentioned therein. To interpret the three statutes together so as to impose multiple penalties on the same tax would, in my opinion, not only be an absurd result, but would also be at odds with the apparent intent of the legislature with regard to this subject as a whole. Such an interpretation is unnecessary where an alternative one would effect the true legislative intent. In my opinion, an alternative interpretation of this nature is available in this situation. I interpret the three statutes about which you have inquired as all referring to one and the same penalty on delinquent taxes. The three statutes simply address different issues relating to the same subject.
For example, the provisions of A.C.A. § 26-37-302, discussed previously, addresses the 10 percent delinquency penalty in a situation where it is collected in connection with a redemption of tax-delinquent real estate. The purpose of that statute is clearly to delineate what must be paid in order to redeem tax-delinquent real property.
The provisions of A.C.A. § 26-36-201, in contrast, address a broader situation encompassing delinquencies on both real and personal property, and encompassing the payment of the delinquency in general — not only in connection with a redemption. This section requires the collector to impose the delinquency penalty.
The provisions of A.C.A. § 26-36-202, on the other hand, authorize theclerk to impose the delinquency penalty. The fact that this section does not create a multiple penalty on the same delinquent tax is reflected in the history of A.C.A. §§ 26-36-201 and 26-36-202.
A.C.A. § 26-36-202 was enacted in its original form in 1883. It created an April 10 deadline for the payment of all property taxes. The collector was required to submit a list of delinquencies to the county clerk on the second Monday in May. Although the collector could close the tax books on April 10, he could, at his discretion, choose to keep them open until he submitted the list of delinquencies to the clerk, and could allow the payment of taxes without a penalty up until that time. The clerk, in turn, was required to impose a 25 percent penalty on all taxes reflected on the collector's delinquency list. In 1911, the predecessor statute to what is now A.C.A. § 26-36-201 was enacted. It imposed upon the collector an obligation to charge a 10 percent penalty on all taxes not paid by April 10. The Arkansas Supreme Court addressed the interaction of these two statutes in Martels v. Wyss, 123 Ark. 184 (1916). There, it was argued that the 1911 statute, with its required 10 percent penalty, impliedly repealed the 1883 statute and its 25 percent penalty. The court rejected the argument and held that both statutes were effective. The new statute created one penalty for taxes paid between the April 10 deadline and the date on which the collector submitted his list of delinquencies to the clerk. The old statute created a different penalty, to be imposed upon taxes not paid at the time the collector submitted his list and which were reflected as delinquent on that list. In other words, the old statute authorized the clerk to impose a 25 percent penalty on taxes not paid by the second Monday in May, and the new statute authorized the collector to impose a 10 percent penalty on taxes not paid by April 10, but paid before the second Monday in May. Taxpayers who waited until after April 10 to pay their taxes were required to pay a 10 percent penalty; those who waited until after the second Monday in May paid the higher 25 percent penalty. The court in Martels did not require the payment of both amounts. The result was that there was in reality only one penalty paid; it was simply paid at a different percentage rate depending on the date on which it was paid. It was also officially imposed by different officials, depending upon the time of payment.
Although the two statutes in their current form no longer create different percentage rates based upon the time of payment, they still reflect a difference in which official has the duty of imposing the penalty, depending upon the time of payment. This history of the two statutes indicates that the provisions of A.C.A. § 26-36-201 refer to thecollector's responsibility, whereas the provisions of A.C.A. § 26-36-202
refer to the clerk's responsibility. That is, if the collector has not collected the 10 percent penalty by the time he submits his list of delinquencies to the clerk, the clerk must reflect on the county records that such penalty is due and owing.
On the basis of the above analysis, I conclude that the provisions of A.C.A. §§ 26-36-201, 26-36-202, and 26-37-302 do not create multiple penalties to be imposed upon the same delinquent taxes. Rather, they refer to the same required penalty and address different issues related to that penalty.
In sum, therefore, it is my opinion that only one 10 percent penalty may be collected on any one delinquent tax.
Question 2 — For the situation described in Question (1)(a), what is theproper distribution of the delinquent real estate tax penalty, and underwhat Code provision(s) (A.C.A. § 21-6-310; A.C.A. § 26-37-205(d);other)?
It is my opinion that for the situation described in Question 1(a), i.e., a redemption at the county level,[5] the delinquent real estate tax penalty must be distributed to the applicable taxing units where the delinquent land is located.
Such a situation is unequivocally governed by the provisions of A.C.A. §26-37-205(d), which states:
 All funds received by a county from the redemption of tax-delinquent land at the county level, including any penalty, interest, and costs, are to be distributed to the applicable taxing units where the delinquent land is located within the county in the manner and proportion that the taxes would have been distributed if they had been collected in the year due.
A.C.A. § 26-37-205(d).
It is possible that some confusion could arise as to the proper distribution of this delinquency penalty because the provisions of A.C.A. §§ 26-36-201 and -202, which address penalties on delinquent taxesgenerally, do not make provision for a particular manner of distribution of the penalty after collection. (I have previously opined — and continute to take the position — that where the statute is silent as to the manner of distribution, the quorum court may determine the manner of distribution. See Ops. Att'y Gen. 95-239 and 95-217.) Arkansas statutory law is, in fact, silent as to the proper distribution of the penalties collected under some of the scenarios addressed by A.C.A. §§ 26-36-201 and -202 (but not as to the distribution of the penalty paid in connection with a redemption of tax-delinquent real estate at the county level).
It is my opinion that in addition to addressing the penalty for delinquent real estate taxes paid in connection with a redemption of the property (which, as indicated above, are clearly governed by A.C.A. §26-37-205(d)), the provisions of A.C.A. §§ 26-36-201 and -202 also encompass scenarios that are not governed by A.C.A. § 26-37-205(d). (An example of such a scenario would be the payment of the penalty for delinquent personal property taxes.) It is my opinion that in these other scenarios addressed by A.C.A. §§ 26-36-201 and -202, the distribution of the collected penalties can be determined by the quorum court, because the statutes are silent on the subject.
However, the statutes are not silent as to the distribution of the penalty paid in connection with a redemption of tax-delinquent real property. Again, such a scenario is governed by A.C.A. § 26-37-205(d); the penalty must be distributed among the applicable taxing units.
Question 3(a) — Would the situation described in Question (1)(a) beconsidered a "redemption at the county level"?
It is my opinion that the situation described in Question 1(a) (i.e., one in which a taxpayer fails to pay real estate taxes by October 10, but pays those taxes at the county level before the land is transferred to the State Land Commissioner) does constitute a redemption at the county level.
The provisions of Act 626 of 1983 shed light on this question. In that act, the legislature provided that sales of tax-delinquent real estate were to take place at the state level only — not at the county level. However, the act explicitly allowed for the redemption of tax-delinquent real estate at the county level prior to the property being transferred to the state for sale. In its current form, the act states:
 The county collector shall hold all tax-delinquent lands in the county for one (1) year after the date of delinquency, and, if the lands are not redeemed by the certification date . . . the collector shall transmit it to the state. . . .
Acts 1983, No. 626, § 1, as amended [A.C.A. § 26-37-101(b) (Michie Supp. 1995) (emphasis added).
The act also states:
 In order to redeem, whether with the county collector or the State Land Commissioner . . . the redeemer of tax delinquent land shall pay. . . .
Acts 1983, No. 626, § 1, as amended [A.C.A. § 26-37-302 (Michie 1992)] (emphasis added).
The legislature's use of the terms "redeem" (and its other forms) clearly indicates that it did not intend to limit the term's meaning to a situation involving a sale and forfeiture of the property. This conclusion is obvious in light of the fact that the legislature disallowed sales at the county level, but allowed redemptions at the county level. Redemptions can therefore occur in the absence of a sale and forfeiture. Because the only occurrence that can take place at the county level in connection with the delinquent property is the payment of the delinquent taxes (and the associated penalties, costs, and fees), it must be concluded that such payment is the "redemption" to which the statutes refer.
For this reason, I must conclude that a payment of the penalty on delinquent real estate tax prior to transference of the property to the State Land Commissioner constitutes a redemption at the county level.
Question 3(b) — If so, must the county issue a redemption certificate andcharge the $2.50 redemption fee described in A.C.A. § 26-37-109(a)(1)?
It is my opinion that if tax-delinquent real estate is redeemed at the county level, as allowed by A.C.A. § 26-37-101, the county is authorized, but not required, to issue a certificate of redemption and charge the $2.50 redemption fee described in A.C.A. § 26-37-109(a)(1).
The language of that statute is couched in permissive, rather than mandatory terms:
 The county collectors of the various counties of the State of Arkansas are authorized to charge a fee of two dollars and fifty cents ($2.50) for the issuance of each certificate of land redemption for each parcel of tax-delinquent land redeemed in their office.
A.C.A. § 26-37-109(a)(1) (emphasis added).
No other provisions of Arkansas law appear to require the issuance of a certificate of redemption or the charging of a fee for such certificate.
I therefore conclude that the county may issue a certificate of redemption and charge a fee for such certificate, but that it is not required to do so.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] The issue of multiple delinquent penalties is discussed in response to Question 2.
[2] As explained in response to Question 2, the distribution of the amounts collected in connection with the payment of delinquent real estate taxes at the county level would be governed by the provisions of A.C.A. § 26-37-205(d)).
[3] For further discussion of why such payment constitutes a "redemption," see response to Question 3(a).
[4] As noted in the response to Question 2, these differences can impact the manner in which the penalty is distributed.
[5] See response to Question 3(a).