SLIP OPINION  Cite as 2014 Ark. 50

# SUPREME COURT OF ARKANSAS

No. CV–13–175

| | |
|---|---|
| SHARON GARRETT<br><br>APPELLANT<br><br>V.<br><br><br>DIRECTOR, DEPARTMENT OF<br>WORKFORCE SERVICES, AND<br>DAVITA<br><br>APPELLEES | **Opinion Delivered** February 6, 2014<br><br>APPEAL FROM THE ARKANSAS<br>BOARD OF REVIEW<br>[NO. 2012-BR-01101]<br><br><br><br>REVERSED AND REMANDED;<br>COURT OF APPEALS' OPINION<br>VACATED. |

**PAUL E. DANIELSON, Associate Justice**

Appellant Sharon Garrett appeals from the decision of the Board of Review affirming the decision of the Appeal Tribunal, which upheld the denial of her unemployment benefits by appellee Director, Department of Workforce Services (Department). Ms. Garrett originally appealed to our court of appeals, which affirmed the Board's decision by a 4-2 vote. *See Garrett v. Dir., Dep't of Workforce Servs.*, 2013 Ark. App. 113. Ms. Garrett petitioned this court for review, and we granted the petition. When we grant a petition for review, we consider the appeal as though it had originally been filed in this court. *See Blake v. Shellstrom*, 2012 Ark. 428. Ms. Garrett's sole point on appeal is that the Board's decision was in error; we agree. We therefore reverse the Board's decision and remand for an award of benefits.

The facts of this case are largely undisputed. Ms. Garrett was employed as a patient-care tech by appellee DaVita, where she was charged with placing patients on dialysis.

According to DaVita's corrective-action form, Ms. Garrett began her employment on July 12, 2010, and was terminated on January 11, 2012.[1] The sole basis for her termination was that she had not obtained her "PCT" certification by the required date, which was within eighteen months of being hired.

Following her termination, Ms. Garrett applied for unemployment benefits, but her application was denied by the Department pursuant to Arkansas Code Annotated § 11-10-514(a)(1) (Repl. 2012), which disqualifies an individual from receiving benefits if the discharge from last work was for misconduct in connection with the work. The Department found that Ms. Garrett was "discharged from your job on 01-11-12 for failure to become certified by Federal Regulations which is a requirement of the job. Your willful actions resulted in this loss and were against your employer's best interest." Ms. Garrett subsequently petitioned for appeal to the Appeal Tribunal.

During the telephone hearing before the hearing officer for the Appeal Tribunal, Ms. Viola Love-Taylor, DaVita's facility administrator, explained that, pursuant to federal requirements, all dialysis technicians are to become certified as "CCHTs" within eighteen months of employment. Ms. Love-Taylor testified that Ms. Garrett was informed of this requirement when she was hired and reminded of this requirement in August and December, 2011.

Ms. Garrett testified that she knew she was going to have become certified, but that

---

[1]During the hearing before the hearing officer for the Appeal Tribunal, DaVita's representative corrected Ms. Garrett's hire date to July 1, 2010.

there was uncertainty as to who was to cover the fee for the certification after DaVita took over the facility. She further testified that she was told that she need only have a certification testing date set within the eighteen-month time frame.[2] Ms. Garrett stated that she finally obtained the money to cover the fee for the testing and submitted her application on December 13, 2011. However, as she testified and Ms. Love-Taylor confirmed, her application was sent back to her solely because Ms. Love-Taylor had failed to fill out the facility's portion of the application completely. As a result of the incomplete application, Ms. Garrett testified, she did not receive the requisite testing date before the expiration of the eighteen-month period, and she was discharged. Ms. Love-Taylor admitted, however, that had Ms. Garrett received a certification date, Ms. Garrett could have remained on the schedule for thirty days until she had taken the test rather than be terminated. Ms. Love-Taylor then confirmed that Ms. Garrett was terminated because she did not have a test date.

On April 10, 2012, the hearing officer for the Appeal Tribunal issued its decision affirming the Department's denial of benefits, finding that

> [Ms. Garrett] testified that she did not obtain her certification prior to her discharge due to not having the funds to pay for the certification and the application being returned for incomplete data. The evidence indicates that the claimant had 18 months from the date of hire to obtain the certification, she was aware that she must pay for the certification, and she failed to do so. Although the employer completed the application incorrectly, it was the responsibility of the claimant to ensure that the application was submitted prior to 18 months and she had successfully passed the exam. The claimant's actions were within her control and her actions violated a standard of conduct which the employer had the right to expect. Therefore, the claimant was

[2]Ms. Love-Taylor confirmed that she had told Ms. Garrett and another employee "that if they had sent their application in and had a test date that I would not take them off the schedule."

SLIP OPINION

discharged from last work for misconduct in connection with the work.

Ms. Garrett then sent her notice to appeal the decision of the Appeal Tribunal to the Board of Review. The Board of Review issued its decision on July 31, 2012, wherein it concluded that the decision of the Appeal Tribunal was correct in both its findings of fact and conclusions of law, and it adopted the Appeal Tribunal's decision as the decision of the Board. The Board further made note of

> the claimant's contention that the employer completed paperwork incorrectly that caused her licensing application to be sent back and that it caused her to not receive her license timely. Although the paperwork had to be corrected and resubmitted, the claimant had eighteen (18) months to submit the paperwork, and the Board finds that the claimant was ultimately responsible for not submitting the application in a timely manner. As such, the claimant's actions were a willful disregard of her employer's interests. Therefore, the claimant was discharged from last work for misconduct in connection with the work.

As already stated, Ms. Garrett appealed to the court of appeals, which affirmed, and petitioned this court for review, which we granted. We turn then to Ms. Garrett's appeal from the Board's decision.

As her sole point on appeal, Ms. Garrett argues that there was no substantial evidence to support the Board's finding of misconduct on her part. She contends that any failure to obtain a testing date before the expiration of the eighteen-month time period was a result of her application not being completed correctly by her employer. The Department counters that the Board could have reasonably reached its decision based on the evidence before it. It urges that had Ms. Garrett submitted her application earlier, there would have been time to correct her employer's error and she would have received her test date in a timely manner. The Department contends that Ms. Garrett's decision to wait until the last minute to file her

4

application was against DaVita's best interests and, therefore, the Board's decision that she was discharged for misconduct was supported by substantial evidence.

Whether an employee's actions constitute misconduct in connection with the work sufficient to deny unemployment benefits is a question of fact for the Board. *Smith v. Dir., Arkansas Dep't of Workforce Servs.*, 2013 Ark. App. 360. This court affirms the decision of the Board of Review if the decision is supported by substantial evidence. *See Mamo Transp., Inc. v. Williams*, 375 Ark. 97, 289 S.W.3d 79 (2008). Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion. *See id*. We view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. *See id*. Even if the evidence could support a different decision, our review is limited to whether the Board could have reasonably reached its decision based on the evidence presented. *See id*.

Here, the Board adopted the decision of the Appeal Tribunal, which affirmed the denial of benefits to Ms. Garrett under Ark. Code Ann. § 11-10-514(a), which specifically provides, in pertinent part: "If so found by the Director of the Department of Workforce Services, an individual shall be disqualified for benefits if he or she is discharged from his or her last work for misconduct in connection with the work." Ark. Code Ann. § 11-10-514(a)(1). At issue in the instant case is whether the Board could have reasonably concluded that Ms. Garrett's actions constituted misconduct.

Pursuant to the statute, misconduct "includes violation of any behavioral policies of the employer as distinguished from deficiencies in meeting production standards or

SLIP OPINION

accomplishing job duties." Ark. Code Ann. § 11-10-514(a)(3)(C). In addition, our court of appeals long ago interpreted misconduct, as that term is used in the statute, to include "(1) disregard of the employer's interests, (2) violation of the employer's rules, (3) disregard of the standards of behavior which the employer has a right to expect of his employees, and (4) disregard of the employee's duties and obligations to his employer." *Nibco, Inc. v. Metcalf*, 1 Ark. App. 114, 118, 613 S.W.2d 612, 614 (1981).

In the instant case, the Board found that Ms. Garrett's actions were a willful disregard of DaVita's interests. However, our appellate jurisprudence makes clear that to constitute misconduct, there must be the element of intent. *See, e.g.*, *Millspaugh v. Dir., Dep't of Workforce Servs.*, 2013 Ark. App. 450; *Clark v. Dir., Emp't Sec. Dep't*, 83 Ark. App. 308, 126 S.W.3d 728 (2003); *Niece v. Dir., Emp't Sec. Dep't*, 67 Ark. App. 109, 992 S.W.2d 169 (1999); *Rucker v. Price*, 52 Ark. App. 126, 915 S.W.2d 315 (1996). In *Nibco*, *supra*, our court of appeals opined that the act of misconduct requires "more than mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good faith error in judgment or discretion." *Id.*, 613 S.W.2d at 614. To that end, "[t]here must be an intentional or deliberate violation, a willful or wanton disregard, or carelessness or negligence of such degree or recurrence as to manifest wrongful intent or evil design" to constitute misconduct. *Id.*, 613 S.W.2d at 614.

Here, Ms, Garrett's facility administrator conceded that her failure to properly complete her portion of Ms. Garrett's application for testing was to her knowledge the sole

hinderance to Ms. Garrett's procurement of a test date. She further conceded that had Ms. Garrett secured a testing date prior to the expiration of the eighteen-month period, she could have allowed Ms. Garrett to remain on the schedule instead of terminating her. With such evidence before us, we simply cannot conclude that Ms. Garrett's failure to obtain a certification testing date was a willful or wanton disregard for DaVita's interest in her completion of the certification requirement. To the contrary, the record reflects that Ms. Garrett, while perhaps late-in-the-game, was on track to receive her testing date in advance of the eighteen-month deadline, but for her employer's failure to properly complete her application for testing. Based on the evidence before it, we hold that the Board could not have reasonably reached its conclusion that Ms. Garrett's actions were misconduct, where the required element of intent was so lacking. Because there was no substantial evidence to support the Board's decision, we reverse and remand for an award of benefits.

Reversed and remanded; court of appeals' opinion vacated.

*Sharon Garrett*, pro se appellant.

*Phyllis A. Edwards*, for appellee.