SLIP OPINION

Cite as 2015 Ark. App. 717

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** E-15-402

|  |  |
|---|---|
| ANA MARTINEZ<br><br>APPELLANT<br><br>V.<br><br>DIRECTOR, DEPARTMENT OF WORKFORCE SERVICES, AND YOURS TRULY CONSIGNMENT SHOPPE<br><br><br>APPELLEES | **Opinion Delivered** December 16, 2015<br><br>APPEAL FROM THE ARKANSAS BOARD OF REVIEW<br>[NO. 2015-BR-01058]<br><br><br><br><br><br><br>REVERSED AND REMANDED |

## BRANDON J. HARRISON, Judge

Ana Martinez appeals the Arkansas Board of Review's (the Board) decision to deny her unemployment benefits. The issue is whether Martinez was discharged from Yours Truly Consignment Shoppe (Yours Truly) for misconduct. We hold that Martinez did not engage in misconduct when she posted a Facebook status arguably critical of her employer; therefore, we reverse the Board's decision and remand for an award of benefits.

Ana Martinez worked at Yours Truly from July 2012 until 27 March 2015, when she was fired. The Arkansas Department of Workforce Services (the Department)

determined that Martinez was disqualified from receiving unemployment benefits due to misconduct, but the Arkansas Appeal Tribunal (Appeal Tribunal) reversed that decision. The Appeal Tribunal stated:

> The claimant was discharged because of the posted comment. The comment was not intended for Montgomery to see or to be aware of. It was not intended to be harmful toward the employer. The posting was done while the claimant was off duty. The claimant exercised a lack of discretion in making such a comment. However, a lack of discretion in isolated instances is not considered misconduct in connection with the work.

Yours Truly appealed to the Board, which held its own hearing in June 2015. Martinez appeared on her own behalf, and Cinda Montgomery, the general manager and owner of Yours Truly, appeared for the company.

Montgomery's testimony revealed that in late March 2015, Yours Truly dismissed several employees for what Montgomery referred to as "gross misconduct and being caught doing wrong in the store." Among the people fired was Melissa McClelland, who posted the following Facebook status early on the afternoon of March 26: "Just got fired with no explanation. :) but I've hated working at yourstruly for a long time now. I will miss a couple people though. Mostly just Ana and Patricia. Lol." Martinez "liked" the status and posted two comments. The first comment stated, "Zam fam. ima miss you too much! ❤❤❤." The second comment was "She did both of y'all wrong."

Both Martinez and Montgomery testified that Martinez made these posts during her lunch break, which she took on premises within close proximity of Montgomery. After someone passed along the post and comments to Montgomery, she pulled Martinez aside and expressed her belief that Martinez had acted improperly. Martinez then deleted

the second comment.[1]  She stated that, after getting home from work, "I went on Facebook and Cinda had already deleted me and blocked me as a friend, so that kind of told me that I was done for anyway."  That night, Martinez posted the following to Facebook:

> my oh my.  there's a reason I don't post my opinions on here, today I did. in sake of a friend.  someone did not like what I had to say even though it's MY fb, MY post/comment.  I can say what I please.
> don't like whatcha see?  then scoot.  really had to be digging deep to even see it anyways.  kinda says a lot.  ima stick up for myself & my woes (people I care about), if that makes anyone feel some typa way, unfriend me.  won't phase me one bit.
> I've learned today how rare 'real' is.  & I appreciate every one of y'all who have kept it real with me from day 1.  I'm out . . .

Several hours later, Martinez sent a text message to Montgomery stating, "Hey Cinda, I just want to apologize for the fb comment earlier.  I was in the wrong to say that & it wasn't my place."  The next day, Montgomery bagged up Martinez's belongings and informed Martinez of the termination.

The Board reversed the Appeal Tribunal and held that Martinez's Facebook post qualified as misconduct as defined by Arkansas Code Annotated section 11-10-514.  The Board's order stated that this posting "was about Montgomery and the employer, and that the claimant was aware that her postings were inappropriate and that the postings would likely lead to her discharge."  It further stated, "The Facebook postings were public and could be viewed by other employees and customers of the employer.  The claimant's

---

[1] The record states that she deleted a comment after Montgomery either ordered her to or strongly suggested that she do so.  The record does not specify which of the two comments is being referenced, but the second one seems most likely.

SLIP OPINION

actions were a disregard of the employee's duties and obligations to the employer and a willful disregard of the employer's interest." Martinez has now appealed.

The Board's decisions are upheld if they are supported by substantial evidence. *Grace Drilling Co. v. Dir.*, 31 Ark. App. 81, 790 S.W.2d 907 (1990). Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion. *Garrett v. Dir.* 2014 Ark. 50, at 5. We view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. *Id.* Even if the evidence could support a different decision, our review is limited to whether the Board could have reasonably reached its decision based on the evidence presented. *Id.* Whether a claimant undertook an act of misconduct sufficient to prevent the receipt of unemployment benefits is a question of fact. *Garrett, supra.* In the unemployment–compensation context, misconduct is defined as "(1) disregard of the employer's interests; (2) violation of the employer's rules; (3) disregard of the standards of behavior which the employer has a right to expect of his employees; or (4) disregard of the employee's duties and obligations to the employer." *Moody v. Dir.*, 2014 Ark. App. 137, at 6, 432 S.W.3d 157, 160.

Though the Board does not seem to have made the distinction between on-duty and off-duty conduct, because the post upon which it made its decision was made after Martinez "went home" and was associated with a personal Facebook account, not a company-maintained account, the post must be evaluated under the standard of off-duty conduct. When the alleged misconduct occurs while the claimant is off-duty, the employer must show, by a preponderance of the evidence, that the conduct of the

SLIP OPINION

employee (1) had some nexus to the work, (2) resulted in some harm to the employer's interests, and (3) was in fact conduct which was (a) violative of some code of behavior contracted between employer and employee, and (b) done with intent or knowledge that the employer's interests would suffer. *Dyer v. Dir.*, 2015 Ark. 470, 469 S.W.3d 372; *Feagin v. Everett*, 9 Ark. App. 50, 652 S.W.2d 839 (1983). The post at issue does not qualify as misconduct under this test.

*Nexus*

Substantial evidence existed to support a finding of a nexus between the status and work. There was conflicting testimony below regarding whether the post related to Montgomery and Yours Truly. But Martinez herself stated that it was written as a broad admonition against anyone who took issue with her expression of support for her former coworker and that she "felt like [she] got backstabbed by somebody else at work" when her comment on McClelland's status was reported to Montgomery. Martinez also claimed that she texted Montgomery "apologizing for commenting on Melissa's status." There is sufficient evidence to support the Board's finding that the status "was about Montgomery and her employer."

*Harm to Employer's Interests*

There was substantial evidence to support the Board's finding of harm to Yours Truly's interests. In discussing what she saw as the harm in Martinez's Facebook activity, Montgomery stated:

> We have a database that has 20,000 consignors in it, their money, their personal information, their—their personal items are entrusted to us. The—the board felt like if the employee would chime in with the other group of employees that—and she would disrespect me as the owner, that we could

not continue to bring her in as an employee. That there would be no respect from any of the employees for me as the general manager, the owner, if I allowed an employee to continue on employment after such actions.

Montgomery's position seems to be that, first, given the basis of the previous firings, those with whom she conducted business might conclude that whatever issues led to the departure of the discharged employees had not been resolved and that they would consequently feel less secure in Yours Truly's ability to keep their information and money safe. And second, Yours Truly believed that Martinez's Facebook activity would erode discipline among coworkers. Though reasonable minds may differ on this point, substantial evidence supports a finding of harm to the employer's interests when all things, including the parties' credibility, are considered.

*Violative and Intentional/Knowing*

Substantial evidence does not support a finding that Martinez's conduct violated any policy or was made with the intent or knowledge that Yours Truly's interests would suffer. Yours Truly offered Montgomery's testimony and documentary evidence of guidelines that employees acknowledged receiving. But neither establishes that Martinez's comments violated any established policy or understanding between employer and employee.

Yours Truly relies on two "Employee Expectations" letters that Martinez signed. The first, signed on 29 May 2014, contains fifteen numbered paragraphs and addresses such issues as friendliness, honesty, attitude, requesting time off, timeliness and diligence, cell phone use, and work attire. On 26 March 2015, the day of the Facebook activity that led to Martinez's termination, another such letter was sent and executed. Consisting of

one long numbered paragraph headed "Positive Attitudes," and sent by Montgomery in her capacity as Yours Truly's general manager, the letter stated, "I want every employee to get along with others, keep negative opinions and gossip out of the work place. If you are unable to do this, you will be dismissed from employment." It goes on to require that customer complaints, problems with other employees, and "negative talk, gossip, lying and judgment against others," be brought to Montgomery's attention, and that employees are not to indulge their coworkers' complaints, because "if [coworkers] give a listening ear to their negativity and complaints and do not give [Montgomery] a chance to get to the bottom of the issues and get it resolved, you can guarantee that the issues will continue." Though the "Employee Expectations" letters prohibit a broad range of conduct, a Facebook status that identifies no one by name and is, under its most incriminating interpretation, an oblique reference to Martinez's displeasure with a reprimand she received from Montgomery, does not fall within its orbit.

The Board's reliance on an interpretation of Martinez's apology text as proof that her at-home Facebook post was made with the intent to bring harm to Yours Truly is misplaced. Admittedly, Martinez sent a text message in which she apologized for her earlier Facebook comment concerning the propriety of other employee dismissals. However, this apology does not relate to her at-home post, nor does it indicate a harmful intent to the employer. While the at-home post expresses exasperation in general terms, the exasperation is not derogatory in nature or directed at any individual or entity.

"[O]ff-duty conduct may be sufficient reason for an employer to sever ties with an employee" but does not necessarily "rise to the level of misconduct in connection with

the work." *Dyer*, 2015 Ark. App. 470, at 4, 469 S.W.3d at 374. That was the case here. Because there was not substantial evidence presented under the legally applicable standard, the Board's decision to deny Martinez benefits is reversed, and the case remanded for an award of benefits.

Reversed and remanded.

VIRDEN and WHITEAKER, JJ., agree.

Pro se appellant.

*Phyllis Edwards*, Associate Counsel, for appellee.