
# ARKANSAS COURT OF APPEALS

DIVISION II, III & IV

**No.** E-16-386

| | | |
|---|---|---|
| JIMMY WILSON | | **OPINION DELIVERED:** MARCH 15, 2017 |
| | APPELLANT | |
| V. | | APPEAL FROM THE ARKANSAS BOARD OF REVIEW |
| DIRECTOR, DEPARTMENT OF WORKFORCE SERVICES, AND CENTERPOINT ENERGY | | [NO. 2016-BR-01073] |
| | APPELLEES | AFFIRMED |

## ROBERT J. GLADWIN, Judge

Jimmy Wilson appeals the Arkansas Board of Review's (Board's) decision denying him unemployment benefits upon finding that he was discharged from his employment for misconduct. We affirm.

Appellant, a forty-year employee of CenterPoint Energy, was employed as a service technician at the time of his discharge. CenterPoint provided appellant with a number of written company policies. Among the writings was a document outlining performance expectations, which required that all employees were expected to abide by the rules and accepted practices of the company. Further, a document titled "Special Precautions for Gaseous Atmospheres" provided that "no person will work in a gaseous atmosphere without back-up assistance. Therefore, no employee will attempt to squeeze off, stop or repair a blowing gas leak on a main or service line in a gaseous atmosphere without backup assistance."

During the hearing, CenterPoint's human-resources representative, Sherry Martin, testified that appellant worked as a service technician. She said that he was discharged for violating company policy by entering a gaseous atmosphere without permission from his supervisor.

Terry Rollins, a district director for CenterPoint, testified that appellant's direct supervisor was Wayne Tilley. Tilley notified Rollins about appellant's actions, and Rollins, Tilley, and Martin interviewed appellant about the incident. Rollins testified that appellant admitted that "he went into a gaseous atmosphere, and he should have called his supervisor but he just got in a hurry and didn't do it."

Appellant testified that on April 29, 2016, he responded to an accident involving a car that had hit a gas riser and had broken it off below the cut-off valve. He stated that he had spoken to Tilley on the way to the accident and that Tilley told him that additional CenterPoint personnel were on their way. Appellant testified that the riser was located near a trailer house and that it needed to be plugged because it posed a danger because of lightning in the area. Appellant said that he discussed the situation with Jonesboro police officers and firefighters who were on the scene, and he felt that the riser needed to be plugged immediately. Appellant said that he conferred with the fire department but did not call Tilley again before entering the gaseous atmosphere "because sometimes when you are out on an emergency like that you've got to make a snap decision to make it safe for the public." Appellant entered the gaseous atmosphere without back up, plugged the riser, and then called Tilley. When asked why he did not call his supervisor before entering the gaseous atmosphere he replied, "I just didn't."

The Appeal Tribunal found that appellant was disqualified under Ark. Code Ann. §

11-10-514(b) (Supp. 2015), determining that he had been "discharged from last work for

misconduct in connection with the work on account of a violation of bona fide written

rules or customs of the employer including those pertaining to his or her safety or the safety

of fellow employees, persons or company property." Appellant appealed to the Board,

which adopted the Appeal Tribunal's decision as its own, and he now appeals to this court.

We review the Board's finding in the light most favorable to the prevailing party and

affirm the Board's decision if it is supported by substantial evidence. *Price v. Dir.*, 2013 Ark.

App. 205. Substantial evidence is such relevant evidence that a reasonable mind might

accept it as adequate to support the conclusion. *Id.* Even when there is evidence upon

which the Board might have reached a different decision, the scope of our review is limited

to a determination of whether the Board reasonably could have reached the decision it did

based on the evidence before it. *Id.* Our function on appeal is not merely to rubber-stamp

decisions arising from the Board. *Id.*

A person shall be disqualified from receiving unemployment benefits if it is

determined that the person was discharged from his or her last work for misconduct in

connection with the work. Ark. Code Ann. § 11-10-514(a)(1). The employer has the

burden of proving by a preponderance of the evidence that an employee engaged in

misconduct. *Spencer v. Dir.*, 2014 Ark. App. 479. Misconduct for purposes of

unemployment compensation involves (1) disregard of the employer's interest, (2) violation

of the employer's rules, (3) disregard of the standard of behavior the employer has a right to

expect of its employees, and (4) disregard of the employee's duties and obligations to the employer. *Id.*

Our appellate jurisprudence makes clear that to constitute misconduct, there must be an element of intent. *Spencer, supra.* Misconduct requires more than mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good-faith errors in judgment or discretion. *Id.* To constitute misconduct there must be an intentional or deliberate violation, a willful and wanton disregard, or carelessness or negligence of such degree or recurrence as to manifest a wrongful intent or evil design. *Id.*

The evidence is clear and confirmed by appellant's testimony that he entered a gaseous atmosphere without back up and without permission from his supervisor. This was a clear violation of his employer's rules and standards of conduct. Appellant admits that he made a "snap decision" and that he "just didn't" call Tilley for permission. CenterPoint is entitled to expect its employees to abide by its safety rules, not only for the safety of its employees, but also for the safety of the public. It is not up to the employee, the Jonesboro Fire Department, or this court to determine when a violation of the rules is justified. The company is better equipped than we are to make those determinations. Our standard of review requires us to affirm the decision because it is supported by substantial evidence.

Affirmed.

GRUBER, C.J., and ABRAMSON, GLOVER, MURPHY, and BROWN, JJ., agree.

HARRISON, KLAPPENBACH, and WHITEAKER, JJ., dissent.

**BRANDON J. HARRISON, Judge, dissenting.** The issue in this case is whether Wilson was discharged from CenterPoint Energy for misconduct. I respectfully disagree with the majority's conclusion that Wilson's actions constituted misconduct and would reverse the Board's decision and remand for an award of benefits.

The majority correctly recites our standard of review: The Board's decisions are upheld if they are supported by substantial evidence, which is evidence that reasonable minds might accept as adequate to support a conclusion. *See Garrett v. Dir.*, 2014 Ark. 50. We view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. *Id.* Even if the evidence could support a different decision, our review is limited to whether the Board could have reasonably reached its decision based on the evidence presented. *Id.* "This is not to say, however, that our function on appeal is merely to ratify whatever decision is made by the Board." *Thomas v. Dir.*, 55 Ark. App. 101, 104, 931 S.W.2d 146, 147 (1996); *see also Clark v. Dir.*, 83 Ark. App. 308, 311, 126 S.W.3d 728, 730 (2003) ("[W]e are not limited to a 'rubber stamp' review of decisions arising from the Board of Review.") (reversing for benefits and collecting numerous cases where the Board was reversed and benefits awarded).

In the unemployment-compensation context, misconduct is defined as "(1) disregard of the employer's interests; (2) violation of the employer's rules; (3) disregard of the standards of behavior which the employer has a right to expect of his employees; or (4) disregard of the employee's duties and obligations to the employer." *Moody v. Dir.*, 2014 Ark. App. 137, at 6, 432 S.W.3d 157, 160. The cases make clear that to constitute misconduct, an element of intent is required. *Garrett*, *supra*; *Hubbard v. Dir.*, 2015 Ark. App. 235, 460

S.W.3d 294. Misconduct requires more than mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good-faith errors in judgment or discretion. *Hubbard*, *supra*. Misconduct must be based on an intentional or deliberate violation, a willful or wanton disregard, or carelessness or negligence of such degree or recurrence as to manifest wrongful intent or evil design. *See Garrett*, *supra*; *Hubbard*, *supra*.

This court has directed that "the statutory misconduct provision of the Law must be given an interpretation in keeping with that of the declared policy. It should not be so literally construed as to affect a forfeiture of benefits by an employee except in clear instances of misconduct." *Willis Johnson Co. v. Daniels*, 269 Ark. 795, 800, 601 S.W.2d 890, 893 (Ark. Ct. App. 1980) (internal citations omitted). Given the undisputed and particular circumstances this case presents, I cannot agree that Wilson's decision to plug the riser was a clear instance of misconduct. In other words, his decision did not constitute an intentional or deliberate violation, a willful or wanton disregard, or carelessness or negligence of such a degree or recurrence that manifested wrongful intent or evil design.

The record shows that Wilson acted with the intent to make a scene safer. No one disputed his testimony on this point. According to Wilson, the car that caused the problem in the first place "almost turned over on top of the riser . . . which could have sparked and caused a fire." He also said, which no one disputed, that "the lightning in the air and everything else, the Jonesboro Police Department and the fire department both agreed that [he] needed to get it plugged off quick[.]" Wilson's additional concern that the riser was "too close to that house trailer" was also undisputed. The company decided that he had

violated a policy and terminated his employment. But that issue is legally separate from whether Wilson acted in a way that manifested the required wrongful intent toward his employer's interest pursuant to section 11-10-514(b).

And paying Wilson's claim in this case would not offend the purpose of our unemployment-security statutes, which is, according to our supreme court, "to protect the state unemployment compensation fund against claims of individuals who would prefer benefits to jobs." *Garrett v. Cline*, 257 Ark. 829, 832, 520 S.W.2d 281, 284 (1975). No evidence suggests that Wilson—who worked for the company from 1976 until 2016 and was denied benefits for his actions during an emergency situation—chose benefits over work. Therefore, I respectfully dissent.

KLAPPENBACH and WHITEAKER, JJ., join in this dissent.

*Jimmy L. Wilson*, pro se appellant.

*Phyllis Edwards*, Associate General Counsel, for appellee.