Brandon J. Harrison, Judge, dissenting. |fiThe issue in this case is whether Wilson was discharged from CenterPoint Energy for misconduct. I respectfully disagree with the majority’s conclusion that Wilson’s actions constituted misconduct and would reverse the Board’s decision and remand for an award of benefits. The majority correctly recites our standard of review: The Board’s decisions are upheld if they are supported by substantial evidence, which is evidence that reasonable minds might accept as adequate to support a conclusion. See Garrett v. Dir., 2014 Ark. 50, 2014 WL 495124. We view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board’s findings. Id. Even if the evidence could support a different decision, our review is limited to whether the Board could have reasonably reached its decision based on the evidence presented. Id. “This is not to say, however, that our function on appeal is merely to ratify whatever decision is made by the Board.” Thomas v. Dir., 55 Ark. App. 101, 104, 931 S.W.2d 146, 147 (1996); see also Clark v. Dir., 83 Ark. App. 308, 811, 126 S.W.3d 728, 730 (2003) (“[W]e are not limited to a ‘rubber stamp’ review of decisions arising from the Board of Review.”) (reversing for benefits and collecting numerous cases where the Board was reversed and benefits awarded). In the unemployment-compensation context, misconduct is defined as “(1) disregard of the employer’s interests; (2) violation of the employer’s rules; (3) disregard of the standards of behavior which the employer has a right to expect of his employees; or (4) disregard of the employee’s duties and obligations to the employer.” Moody v. Dir., 2014 Ark. App. 137, at 6, 432 S.W.3d 157, 160. The cases make clear that to constitute misconduct, an element of intent is required. Garrett, supra; Hubbard v. Dir., 2015 Ark. App. 235, 460 S.W.3d 294. Misconduct requires more than mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadverten-cies, ordinary negligence in isolated instances, or good-faith errors in judgment or discretion. Hubbard, supra. Misconduct must be based on an intentional or deliberate violation, a willful or wanton disregard, or carelessness or negligence of such degree or recurrence as to manifest wrongful intent or evil design. See Garrett, supra-, Hubbard, supra. This court has directed that “the statutory misconduct provision of the Law must be given an interpretation in keeping with that of the declared policy. It should not be so literally construed as to affect a forfeiture of benefits by an employee except in clear instances of misconduct.” Willis Johnson Co. v. Daniels, 269 Ark. 795, 800, 601 S.W.2d 890, 893 (Ark. Ct. App. 1980) (internal citations omitted). Given the undisputed and particular circumstances this case presents, I cannot agree that Wilson’s decision to plug the riser was a clear instance of misconduct. In other words, his decision did not constitute an intentional or deliberate violation, a willful or wanton disregard, or carelessness or negligence of such a degree or recurrence that manifested wrongful intent or evil design. The record shows that Wilson acted with the intent to make a scene safer. No one disputed his testimony on this point. According to Wilson, the car that caused the problem in the first place “almost turned over on top of the riser ... which could have sparked and caused a fire.” He also said, which no one disputed, that “the lightning in the air and everything else, the Jonesboro Police Department and the fire department both agreed that [he] needed to get it plugged off quiek[.]” Wilson’s additional concern that the riser was “too close to that house trailer” was also undisputed. The company decided that he had |7violated a policy and terminated his employment. But that issue is legally separate from whether Wilson acted in a way that manifested the required wrongful intent toward his employer’s interest pursuant to section 11—10—514(b). And paying Wilson’s claim in this case would not offend the purpose of our unemployment-security statutes, which is, according to our supreme court, “to protect the state unemployment compensation fund against claims of individuals who would prefer benefits to jobs.” Garrett v. Cline, 257 Ark. 829, 832, 520 S.W.2d 281, 284 (1975). No evidence suggests that Wilson—who worked for the company from 1976 until 2016 and was denied benefits for his actions during an emergency situation—chose benefits over work. Therefore, I respectfully dissent. Klappenbach and Whiteakek, JJ., join in this dissent.