Cite as 2022 Ark. App. 96

# ARKANSAS COURT OF APPEALS
DIVISION III
No. E-21-81

AMANDA SHARUM

APPELLANT

V.

DIRECTOR, ARKANSAS
DEPARTMENT OF COMMERCE,
DIVISION OF WORKFORCE
SERVICES

APPELLEE

Opinion Delivered March 2, 2022

APPEAL FROM THE ARKANSAS
BOARD OF REVIEW
[NO. 2021-BR-00079]

REVERSED AND REMANDED

## BRANDON J. HARRISON, Chief Judge

This case questions what relevance an opinion from this court should have in a context that could not have been on anyone's mind when the precedent issued more than forty years ago. In 1980—less than one year after the Arkansas Court of Appeals was created—this court decided *Paulino v. Daniels*, 269 Ark. 676, 599 S.W.2d 760 (Ark. App. 1980). The case addressed how to keep claimants who seek state unemployment benefits on track to a timely resolution of their claims. *Paulino*, which is essentially a due-process precedent, is now being widely cited in Appeal Tribunal and Board of Review decisions that deny claims under a benefit known as Pandemic Unemployment Assistance—a federal program that was not conceived until the COVID-19 pandemic began ravaging the United States in 2020. As it is currently being applied, *Paulino* tends to deny due process more than ensure it is satisfied at the point where state unemployment benefits intersect with federal pandemic-assistance benefits. That is what this case is fundamentally about.

## I.

There are essentially two reasons why we are reversing the Board of Review. First, Sharum had an insufficient wage history to be eligible for a state benefit. Therefore, she was mistakenly told to apply for state benefits before she could pursue a PUA benefit. This legal advice resulted in a wild legal goose chase that cost Sharum valuable time that pushed her into a "*Paulino* problem." The second reason, which is the larger point, is that the Board of Review's reliance on *Paulino* has created an intractable timing problem for claimants like Sharum. The problem is that, in who knows how many cases, the twenty-day period to appeal a PUA denial will not give claimants enough time to have state claims adjudicated before the time to appeal the Pandemic Unemployment Assistance (PUA) denial has run.

We explain in detail below.

As stated in our previous opinion,[1] on 10 August 2020, the Division of Workforce Services declared Sharum ineligible for PUA because she was not a "covered individual within the meaning of Section 2103(a)(3) of the CARES Act." The 10 August 2020 Division's notice of determination of entitlement told Sharum: "More information regarding the unemployment insurance program may be found in the PUA handbook . . . or your local office." The stated reason for the denial, which was incomplete and confusing, is at the heart of this appeal.

---

[1] We previously ordered the agency to supplement the record, *Sharum v. Dir.*, 2021 Ark. App. 419, and it did so.

2

Sharum appealed the Division's notice of determination of entitlement to the Appeal Tribunal. The Tribunal issued a written decision on November 17 that denied Sharum pandemic assistance because she "ha[d] not first filed for regular unemployment benefits." As we will show, the Appeal Tribunal compounded the Division's initial error when it denied relief.

Undaunted, on December 14, Sharum challenged the Appeal Tribunal's November 17 denial. On 25 January 2021, the Board of Review held a so-called "*Paulino* hearing" to determine whether Sharum's tardy appeal to the Board of Review was due to circumstances beyond her control. Appeals from decisions of the Division of Workforce Services are timely made if the Division receives the appeal within twenty calendar days from the date the adverse decision was mailed to a claimant. Ark. Code Ann. § 11–10-524(a) (Supp. 2021). Alternatively, an appeal is timely made when it is postmarked within the twenty-day period. Tardy appeals may be considered timely if the delay was due to circumstances beyond the claimant's control. *Id*.; *see also Paulino*, *supra*. Sharum's appeal of the adverse Appeal Tribunal decision to the Board of Review was deemed untimely because she did not meet one of the two available options for making a timely appeal.

On January 29, the Board dismissed Sharum's appeal and made the following relevant findings of fact and conclusions of law:

> The claimant testified that she received the Appeal Tribunal decision in Appeal No. 2020-AT-10009. The claimant said that she contacted the Fort Smith Division of Workforce Services local office to ask how to proceed. She stated that she filed a claim for regular unemployment insurance benefits. She noted that when she received a Notice of Monetary Determination that showed she would not receive regular unemployment insurance benefits, she decided to file an appeal of the Appeal Tribunal decision that was mailed to

3

her on November 17, 2020, that affirmed the denial of pandemic Unemployment Insurance benefits.

> The Board finds that the evidence does not establish by a preponderance that the late filing of the appeal to the Board was due to circumstances beyond her control. The Board noted that the claimant could have filed an appeal of the Appeal Tribunal decision, but waited until she obtained a determination from the Division that found she was not eligible for regular unemployment and then she filed an appeal of the Appeal Tribunal decision. That decision was a circumstance within her control.

Sharum timely appealed to this court the Board of Review's *Paulino*-based decision that affirmed the dismissal of her pandemic-assistance claim.

## II.

We affirm Board of Review decisions when they are supported by substantial evidence. *Robinson v. Dir.*, 2021 Ark. App. 485, ___ S.W.3d ___. Substantial evidence is that which reasonable minds might accept as being adequate to support a conclusion. *Garrett v. Dir.* 2014 Ark. 50. We view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. *Id.* Even if the evidence could support a different decision, we limit our review to whether the Board could have reasonably reached its decision on the basis of the evidence presented. *Id.*

We give no deference, however, to administrative agencies' interpretations of statutes. *See Myers v. Yamato Kogyo Co., Ltd.*, 2020 Ark. 135, 597 S.W.3d 613.

### A. Insufficient Wages

To be eligible for state unemployment benefits for any benefit year, a claimant must have been paid wages in at least two quarters of his or her base period; and the total wages paid during the base period must be at least thirty-five times his or her weekly benefit amount. Ark. Code Ann. § 11–10–507(5)(A) (Supp. 2021). As early as 10 August 2020,

4

the Division noted that Sharum was "Non-U.I. Eligible." A 30 October 2020 printout of Sharum's wage history also shows insufficient wages earned during her base period. This fact was before the Appeal Tribunal when Sharum explained that she had worked for only five weeks as a Sonic cook. That her insufficient wage history was before the Appeal Tribunal necessarily means that the Division personnel had this wage information when Sharum was involved in the reticulated and disjointed process of seeking pandemic assistance. The Board of Review agreed with the Appeal Tribunal on the insufficient-wages point, for it also recited (without disputing the fact) that the Division's formula showed that Sharum had insufficient wages "upon which to claim for regular unemployment insurance benefits."

What is the legal significance of this finding of fact, which has been in the administrative record from the get-go? The answer is that Sharum's insufficient-wages history, which has been known to Division personnel at every level, means that she cannot be denied PUA for the reason the Appeal Tribunal provided. And as to the Board of Review's *Paulino* ruling, it is an error of fact and law. Why? Because the Board of Review is applying this court's *Paulino* decision to a situation that *Paulino* never contemplated. And the Board of Review holds that Sharum's reliance on an unwritten Division policy was unreasonable. The Board of Review, however, does not give full force to the Division's lack of clear written communication to Sharum regarding how she can reliably cross the intersection of federal pandemic assistance and state unemployment benefits.

The Coronavirus Aid, Relief, and Economic Security (CARES) Act expanded states' abilities to provide unemployment benefits to workers who have been impacted by the

5

COVID-19 pandemic. *See* Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) (codified at 15 U.S.C. §§ 9021 to 9034). The CARES Act includes workers who are not ordinarily eligible for state unemployment benefits. 15 U.S.C. § 9021(a)(3). Here is a critical point to make: section 9021 does not specify whether a person who makes a claim for PUA must first file for regular state unemployment benefits. 15 U.S.C. § 9021. That point bears repeating: section 9021 *does not* require a claimant to file for regular state unemployment benefits *before* the claimant may seek PUA. The same is true regarding federal regulations that the CARES Act expressly incorporated; that is, the federal regulations do not require that a claimant *must first apply for* regular state unemployment *and be denied* state benefits *before* the claimant may apply for PUA benefits. *See* 15 U.S.C. § 9021(h); 20 C.F.R. Part 625 (2021).

In April 2020, however, the U.S. Department of Labor issued Unemployment Insurance Program Letter No. 16-20 (and six subsequent changes to it). The Unemployment Program Letter, which speaks to Pandemic Unemployment Assistance eligibility, states in relevant part:

> In processing claims for PUA, states must verify that individuals have no regular UI entitlement. If the individual is not eligible for regular UI *because there are insufficient covered wages* or the individual has an active UI claim with a definite or indefinite disqualification, *then a state does not need to require the individual to file a regular UI initial claim.*

> . . . .

> If the individual's eligibility for regular UI *is questionable* (for example, there are wages in the base period but no claim is filed, or a job separation that has not been adjudicated), *then the state must first require the individual to file a regular UI initial claim.* If the individual is subsequently disqualified, then the state may consider the individual for PUA eligibility.

6

U.S. Dep't of Labor, Unemployment Insurance Program Letter No. 16–20, Unempl. Ins. Rep. (CCH) ¶ 22,458, 2020 WL 2146515 (April 5, 2020) (emphasis added).

Letter No. 16–20 suggests how a state agency should determine whether an applicant is a "covered individual" for pandemic-assistance purposes. Recall all this started when Sharum applied for PUA and was denied because the Appeal Tribunal declared that Sharum was not a "covered individual"; and she was not so because she "ha[d] not first filed for regular unemployment benefits." But it was clear to the Division, up front, that Sharum was ineligible for state unemployment benefits because she lacked a history of "insufficient covered wages." By federal statute, a claimant like Sharum is *potentially* eligible as a "covered individual" *if* she is ineligible "for regular compensation or extended benefits under State or Federal law or pandemic emergency unemployment compensation under [15 USC §] 9025."[2] And Sharum was ineligible "for regular compensation or extended benefits under State or Federal law or pandemic emergency unemployment compensation under [15 USC §] 9025" given the record in this case.

Nowhere has the Board of Review or the Appeal Tribunal adequately explained Sharum's eligibility for state unemployment benefits. Sharum was recognized at every level to have a wage history that made her ineligible for state benefits. Because she was ineligible for regular state benefits, Sharum had met at least one of the requirements for being a "covered individual" under the CARES Act. Moreover, all the CARES Act requires is

---

[2] A claimant seeking PUA benefits must also be able to work and available to work—but unable or unavailable to do so because of one or more specified factors relating to the COVID-19 pandemic. *See* 15 U.S.C. § 9021(a)(3)(A). This COVID-related requirement is not at issue.

that a state has a process for determining that a PUA applicant is ineligible for regular unemployment benefits. That process may or may not include adjudicating a full claim for regular unemployment benefits depending on the circumstances.

This appeal is multilayered, so let's sum up the essential points thus far. There was substantial evidence that Sharum was ineligible for "regular UI" state benefits because she lacked a sufficient wage history. And the "insufficient wages" scenario is precisely one that Letter No. 16-20 addresses—just plug Sharum's name into the Letter: "If [Sharum] is not eligible for regular UI because there are insufficient covered wages . . . then a state does not need to require the individual to file a regular UI initial claim." U.S. Dep't of Labor, Unemployment Insurance Program Letter No. 16-20, *supra*. Because it was apparent on the face of the administrative record that Sharum was ineligible for state benefits, it was unfair for Division personnel to send Sharum on a wild legal goose chase, which started when it told her that she had to first file a claim for state benefits before seeking pandemic assistance. For reasons we will explain, while on this wild legal goose chase fueled by potentially faulty information from the agency, the twenty-day clock was running on the time that she purportedly had to appeal the PUA determination.

B. More on the *Paulino* Vortex

As we have just shown, the Board of Review dismissed Sharum's appeal because it found that she could have appealed the Appeal Tribunal decision within twenty days of the date the adverse decision was mailed to her; instead, she waited until she obtained a determination that she was ineligible for "regular" state unemployment benefits before appealing the adverse pandemic-assistance decision. Yet, Sharum waited to file her appeal

8

because she followed Division personnel advice (which was never rebutted by any Division personnel testimony or any related document).

Arkansas's statutory appeal process related to state unemployment benefits did not contemplate the intersecting state and federal unemployment-benefits paths that the COVID-19 pandemic injected into the Division of Workforce Services' system used to administer unemployment benefits. What we have essentially are parallel state- and federal-benefits appeals going forward more or less simultaneously, and they interfere with one another. Put simply, claimants are first denied PUA because they are found ineligible for reasons they may disagree with and want to appeal. But the same claimants are also told that PUA-eligibility "rules" require that they first apply for state benefits and then allow the traditional unemployment-claim process to run its course fully. Claimants are apparently told that once a determination of regular state unemployment eligibility is made, then they will either be granted or denied UI benefits. If they are denied, claimants can then use that denial to support an appeal of a PUA denial. But claimants who follow these instructions and file their PUA appeal after they have received a state determination miss the twenty-day deadline to appeal a PUA determination under a *Paulino* analysis because their failure to appeal the PUA denial within twenty days is "a circumstance within their control." Yet, the regular state unemployment determination and appeal process takes more than twenty days and is absolutely outside the claimant's control. All of which is to say, the state track cannot be reliably completed within the twenty days given to a claimant to appeal a PUA denial when the PUA denial is based on the claimant's failing to first apply for state benefits.

9

Moreover, no document or agency decision has yet stated under what circumstances a claimant must fully exhaust his or her administrative remedies, including exercising appeal rights, in the state track before he or she may be considered by the Division as a "covered individual" for PUA benefits under the federal track.[3] It is not currently clear to this court what the process is; neither the Appeal Tribunal nor the Board of Review has explained why it is just and fair to use *Paulino* in this case to deny benefits. To add chaos to confusion, we cannot even reliably discern whether a claimant can seek a redetermination of PUA benefits after an initial appeal has been timed out under a *Paulino* analysis. *See Ark. Emp. Sec. Dep't v. Mellon*, 322 Ark. 715, 910 S.W.2d 699 (1995) (a nonmonetary redetermination is made before the administrative appeal stage); *see also* Ark. Code Ann. § 11-10-524 (Supp. 2021). If a redetermination can be sought, then why even apply *Paulino* to the PUA–related appeal process in the first place? Why not "stay" the PUA appeal process while the state UI process plays itself out? If a redetermination is not available to a claimant, which is unclear at this time to this court, then the Catch–22 that the Division, the Appeal Tribunal, and the Board of Review have imposed is unfair and, thus far, unjustified.[4]

---

[3]As the concurrence points out, whether Sharum had to appeal the adverse state ruling, or if receiving the adverse determination was enough to meet any "first apply or file for" requirement, is unclear. We agree and add that this is part of the problem with the Division of Workforce Services decisions in this area.

[4]The concurrence believes Sharum meant to appeal the PUA determination when she went to the local office on November 23. The record is murky; but the view is reasonable if some inferences are made. Conversely, it has a significant drawback, which is that no appeal tribunal within the Division of Workforce Services provided the concurrence's factual narrative and legal reasoning. Had the Board of Review (as the ultimate arbiter) seen the record the way the concurrence does, then this appeal would not likely exist.

Take this case. After Sharum received the Appeal Tribunal's decision denying PUA, she went to the Division's local office and asked what she should do.[5] Because the Appeal Tribunal's decision said that she failed to first file for state unemployment benefits, the Division explained that she needed to file for regular unemployment and be denied before she could appeal. Sharum followed this advice and filed an initial claim for state benefits on November 23. According to Sharum, she did not receive the Division's denial of her regular state unemployment-benefits claim until December 22, or possibly December 21. In other words, she did not officially find out that she was ineligible for state benefits until after the twenty-day time to appeal the prior adverse PUA decision had already expired.

In the absence of some written directive to the contrary or testimony to the contrary, it was reasonable for Sharum to rely on legal and instructional directives that the Division's personnel gave her on how to navigate the apparently dangerous intersection where PUA and regular state UI benefits meet. Four months had passed from the time Sharum applied for PUA before she was told that she must first "file" for regular state unemployment benefits before she could be eligible for PUA. Nothing in the Division's handbook or notices informed Sharum that she must, *on the front end*, apply for regular state unemployment benefits before she could even be considered for PUA. The legal authority that the Appeal Tribunal cited for this requirement, § 2102(3) of the CARES Act, *does not state* that a claimant must first file for regular unemployment benefits before he or she may be eligible for PUA. This makes sense because the PUA program temporarily expanded unemployment benefits for up to thirty-nine weeks and provided federal benefits to more

---

[5]This testimony is taken from the Board of Review hearing held on 25 January 2021.

types of people—including the self-employed and gig workers—who would otherwise be ineligible for any state unemployment benefits. 15 U.S.C. § 9021(a)(3).

But even assuming that a determination of eligibility for regular state unemployment benefits is a required prerequisite for the Division to review whether a claimant like Sharum is a qualified applicant for PUA benefits, there is unrebutted testimony that Division personnel instructed Sharum that she must receive a determination stating that she is ineligible for regular state unemployment benefits before she may act on a PUA claim. Sharum's unrebutted proof (her testimony and her documents) was that Division personnel told her that she must first apply for regular state unemployment benefits *and* be disqualified before she could potentially become a "covered individual" for PUA purposes. In fact, the Board of Review's attorney told Sharum the same thing: "you have to be *disqualified* from receiving regular benefits *before* you can apply for pandemic unemployment benefits, and for some reason, that didn't get translated very well in the beginning." (Emphasis added.)

Sharum had no good choices. She could follow the Division personnel's verbal instructions to wait for a regular unemployment determination before appealing (the ageing) denial of pandemic assistance, which would most assuredly make any PUA-related appeal untimely. Or Sharum could take the equally futile path of following the Appeal Tribunal's written instructions to appeal its PUA denial within twenty days—although it told her (erroneously in these circumstances) that she was ineligible for pandemic assistance because she had not yet applied for so-called "regular UI benefits."

Sharum took the first choice and followed the instructions that her local Division personnel gave her, which meant that Sharum's attempt to get her regular state

12

unemployment claim fully adjudicated before appealing the denial of her PUA claim would necessarily, and in every practical instance, result in a late appeal under a *Paulino* analysis.

We end where we began. *Paulino*'s general rule was simply not created to handle the situation to which it has been applied. The CARES Act does not state that a claimant must have his or her regular state unemployment claim fully adjudicated before he or she may apply for PUA benefits, and the appeals process implemented in this case was unfair. The claims process was not clearly communicated to Sharum in the documents that she received from the Division. In the absence of clear, written communication, Sharum reasonably relied on the instructions of her local unemployment office, which, according to the Board of Review's own statement, admittedly led Sharum astray—"Well that's wrong, but okay. I mean, that might be what they told you, but that's wrong." The bottom line is that Sharum's appeal from the Appeal Tribunal decision to the Board of Review was "received" by the Board of Review outside the twenty-day period because of multiple errors and miscommunications from the Division of Workforce Services, and Sharum certainly had no control over them.

★ ★ ★

The Board of Review's determination that Sharum's appeal was untimely under *Paulino* is reversed.[6] The case is remanded to the Division of Workforce Services, which is

---

[6]Sharum asks that we order a redetermination of her entitlement to nonmonetary PUA benefits pursuant to Ark. Code Ann. § 11-10-522(f) (Supp. 2021). We express no opinion on that issue. We do note that the U.S. Department of Labor instructed state agencies to review regular state unemployment claims that were denied as of January 27, 2020 and identify individuals "who are potentially eligible for PUA and provide them with appropriate written notification of their potential entitlement to PUA, including filing

directed to reconsider Sharum's claim to Pandemic Unemployment Assistance benefits in a manner not inconsistent with this opinion.

Reversed and remanded.

KLAPPENBACH, J., agrees.

HIXSON, J., concurs.

**KENNETH S. HIXSON, Judge, concurring**. I concur with Chief Judge Harrison that Sharum's claim for Pandemic Unemployment Assistance (PUA) benefits should be reversed and remanded to the Board of Review for a redetermination. However, I would do so for a simpler, more direct reason. The Board of Review determined that Sharum's notice of appeal was untimely for circumstances not beyond her control. I disagree with that decision. However, our task is not to reinvent the wheel; our limited task is to simply determine whether the Board of Review erred.

A brief overview of the PUA guidelines and application process is helpful. First, we have to wear blinders and understand there were several different COVID-19 pandemic–related employee funds created by the federal government. That is a difficult task in itself. One fund was created to extend unemployment insurance (UI) benefits beyond the regular period of unemployment benefits. Another fund was created to increase UI benefits by $600 a week. And there were myriad other funds. This fund—the PUA fund—was created to provide UI benefits to individuals who are *not* eligible for regular state UI benefits (e.g., independent contractors, part-time employees, self-employed, etc.). PUA is a federal

---

instructions." U.S. Dep't of Labor, Unemployment Insurance Program Letter No. 16–20, Attachment 1, at I-14, Unempl. Ins. Rep. (CCH) ¶ 22,458 2020 WL 2146515 (April 5, 2020).

14

program designed to provide UI benefits to those individuals who were not otherwise covered by regular state UI systems and who were left without any form of income due to COVID-19. This is a critical distinction and must be kept in mind in resolving the issues herein. So, for purposes of the PUA, there are two distinct classes of individuals. There are individuals who are *eligible* for regular state UI benefits and individuals who are *ineligible* for regular state UI benefits. We have all heard the catchphrase "when in doubt, follow the money." The same is true here. The bottom line is whether the claimant is going to receive state money or federal money. There is the clear line of demarcation; an individual must be *ineligible* for regular state UI benefits as a precondition for eligibility for federal PUA benefits. This demarcation is nonnegotiable. Therefore, the threshold question for entitlement to PUA benefits is whether the claimant is ineligible for regular state UI benefits. As such, it stands to reason that when a claim for PUA benefits is submitted to the Division of Workforce Services (DWS), DWS must first be required to determine whether a claimant was ineligible for regular state UI benefits before DWS can approve the claimant's application for PUA benefits.

If the threshold question is whether a claimant is ineligible for regular state UI benefits, the next step in the analysis is to review the manner in which DWS makes this threshold determination. Because of the rush to provide pandemic UI relief to the country, the federal government created new funds and programs but did not create a new system to adjudicate entitlement to these funds and programs, such as PUA claims. Instead, the federal PUA guidelines generally provide that each state shall create its own procedure or use its existing regular state UI procedure to adjudicate PUA claims. Arkansas elected to use its

existing regular UI claim-adjudication framework. Therefore, the contemplated PUA administrative scheme is that a PUA claim is filed with DWS. If the claimant is unsuccessful, then the claimant may appeal to the Arkansas Appeal Tribunal, then appeal to the Board of Review, and then appeal to the Arkansas Court of Appeals. Each appeal process has a twenty-day window in which to file a notice of appeal to the downstream forum, with the exception that the claimant has thirty days to appeal to the Arkansas Court of Appeals. If a claimant does not file a notice of appeal timely, then the claimant may request a *Paulino* hearing[1] to determine whether the claimant's late notice of appeal is due to circumstances beyond the claimant's control. Hence, a *Paulino* hearing is a necessary component within the administrative scheme of DWS and the Board of Review. And, as far as I can ascertain, there is nothing about Arkansas' PUA administrative scheme that would prevent a *Paulino* hearing for PUA claims. It should be noted that DWS simultaneously adjudicates claims for regular state UI benefits and PUA benefits. This simultaneous adjudication necessarily provides fertile ground for confusion.

So, we have determined that the State of Arkansas utilizes its existing regular UI claims procedure to adjudicate PUA claims. Once a claim for PUA benefits is submitted, DWS must first determine whether the PUA claimant is ineligible for regular state UI benefits. To that end, this question arises: Is the PUA claimant required to first file a claim for regular state UI benefits? This is the source of most of the confusion in this case. Unfortunately, the answer to this crucial question is "sometimes." In very general terms, the PUA guidelines provide that if the claimant is clearly ineligible for state regular UI

---

[1]*Paulino v. Daniels*, 269 Ark. 676, 599 S.W.2d 760 (Ark. App. 1980).

benefits from the documents presented to DWS, then a PUA claimant is not required to file a regular state UI claim. However, if the claimant's eligibility for state regular UI benefits is "questionable," then the PUA claimant must first file a claim for state regular UI benefits. While this may be awkward—we did not write the federal PUA guidelines—it does make sense. Because there is no hearing during the DWS adjudication, this determination is made solely from the documents presented. If the claimant is clearly ineligible for state regular UI benefits from the documents presented, the claimant meets the threshold for entitlement to federal PUA benefits. However, if the claimant's ineligibility for state benefits is questionable based on the documents presented, the PUA claimant must first file a state regular UI claim. The PUA claimant's goal in this adjudication scheme is for DWS to find the PUA claimant is ineligible for state regular UI benefits. If, at any stage of the appeal process, the PUA claimant is found to be ineligible for regular state UI benefits, then the PUA claimant can file a claim for PUA benefits. Muddy, but understandable.

I stated that the above paragraph was a "general" description of the rules. Here is an excerpt from Chief Judge Harrison's opinion containing actual language from what we have referred to as the federal PUA guidelines:

> In April 2020, however, the U.S. Department of Labor issued Unemployment Insurance Program Letter No. 16-20 (and six subsequent changes to it). The Unemployment Program Letter, which speaks to Pandemic Unemployment Assistance eligibility, states in relevant part:

> In processing claims for PUA, states must verify that individuals have no regular UI entitlement. If the individual is not eligible for regular UI *because there are insufficient covered wages* or the individual has an active UI claim with a definite or indefinite disqualification, *then a state does not need to require the individual to file a regular UI initial claim.*

> . . . .

17

If the individual's eligibility for regular UI *is questionable* (for example, there are wages in the base period but no claim is filed, *or a job separation that has not been adjudicated), then the state must first require the individual to file a regular UI initial claim.* If the individual is subsequently disqualified, then the state may consider the individual for PUA eligibility.

Dep't of Labor, Emp. & Training Admin., Unemployment Insurance Program Letter No. 16-20, Attachment 1, at I-9, Unempl. Ins. Rep. (CCH) ¶ 22,460, 2020 WL 2146515 (April 5, 2020) (emphasis added).

Remember, under the PUA guidelines, if a claimant is eligible under the regular state UI claims, she is ineligible for PUA. So, let's dissect this guideline provision from the DWS adjudication perspective. (1) *States must verify* that individuals have no regular UI entitlement. (2) If the individual is not eligible for regular UI because there are insufficient covered wages or the individual has an active UI claim with a definite or indefinite disqualification, then a state does not need to require the individual to file a regular UI initial claim. But the provision continues: (3) If the individual's eligibility for regular UI *is questionable* (for example, there are wages in the base period but no claim is filed or a job separation that has not been adjudicated), then the state must first require the individual to file a regular UI initial claim. So, back to my generalization: if the PUA claimant is clearly ineligible for state regular UI benefits, then the claimant does not have to file a state regular UI claim. However, if the PUA claimant's eligibility for state regular UI benefits is questionable, then the PUA claimant must file a regular state UI claim to resolve that eligibility issue.

With that overview of the PUA adjudication process, we review Sharum's claim for PUA benefits. Sharum worked for Sonic in Ft. Smith. Sharum claimed she was furloughed due to COVID-19 and filed a claim for PUA on July 24, 2020, in an online application.

18

After reviewing Sharum's application, DWS noted that the documents did not support Sharum's PUA claim. There were questions regarding whether Sharum was self-employed and her reasons she claimed she had been furloughed due to COVID-19. On July 30, 2020, DWS wrote Sharum a letter requesting information regarding any self-employment. Then, DWS wrote Sharum a subsequent letter requesting four additional items of information: a copy of Sharum's state-issued identification, proof of previous employment from which she was unemployed, proof of COVID-19 related reason claimed, and current phone number and address. Sharum promptly replied and faxed a copy of her driver's license, a paystub from Sonic, and her phone number and address. Regarding "proof of COVID-19 related reason claimed," Sharum stated: "I am not sure how to send proof that I called the hospital b/k I had been in the store that was on the news verifying COVID-19 employer. (JC Penney, Ft. Smith). The nurse told me to quarantine for 14 days but to come in if I felt any different or any symptoms." While it is somewhat nebulous, it appears that Sharum was attempting to explain to DWS that she had been in a JC Penney store in Ft. Smith and later saw on TV that someone at that store had tested positive for COVID-19. It appears Sharum called a hospital, and a nurse told her to self-quarantine for fourteen days. That is Sharum's "COVID-19 related reason" why she believed she could not return to work at Sonic.

It is clear from the attachments to her return fax to DWS that Sharum provided DWS with a copy of her driver's license, a copy of her pay stub, and her phone number and address as requested. DWS apparently was not satisfied with her explanation regarding the "proof of COVID-19 related reason," and DWS issued a determination that Sharum was not eligible for PUA benefits because she was not a "covered individual within the

19

meaning of Section 2102(a)(3) of the CARES Act." The determination advised Sharum that she could appeal the determination to the Arkansas Appeal Tribunal.[2]

Sharum timely appealed the DWS determination to the Arkansas Appeal Tribunal. Sharum, in her handwritten notice of appeal, stated that she disagreed with the decision to deny her PUA benefits and that she had been

> locked out [of the DWS online portal] several times & called several times [and] finally a lady completed my application while on phone w/ me. Apparently she checked wrong box, so six days later [and] two more calls figured that out. I've done everything asked & not sure why I'm denied. [I] waited and numerous calls were made? Also, there was a card or claim already attached to ph #. . . . not sure why? Error[?]

The Appeal Tribunal hearing was held on November 10, 2020. It was a very short hearing. During the hearing, the hearing officer asked Sharum if she had filed a claim for regular state UI benefits. Sharum answered no. When Sharum testified that she had not filed for regular UI benefits, it is obvious the hearing officer decided to deny her claim for PUA benefits. Clearly, the hearing officer held the position that one must first file a claim for regular UI benefits prior to filing a claim for PUA. On November 17, 2020, the Appeal Tribunal issued a determination that denied Sharum's claim for PUA because she "ha[d] not first filed for regular unemployment benefits."[3] Sharum had twenty days, or until December 7, 2020, to file a notice of appeal to the Board of Review.

_____

[2]It is worth noting that at that point, DWS did not decide Sharum's PUA claim on the basis of insufficient wages.

[3]Again, it is significant to note that the Appeal Tribunal came up with a completely different reason to deny PUA benefits than that of DWS. It had nothing to do with insufficient wages or lack of information from the employer. The new reason was simply that Sharum had not filed for regular state UI benefits prior to filing for PUA benefits.

Sharum filed an appeal to the Board of Review on December 14, 2020. On its face, Sharum's notice of appeal was untimely because it was seven days late. However, the Board of Review invited Sharum to participate in a *Paulino* hearing to determine if her failure to timely file a notice of appeal was due to circumstances beyond her control. This *Paulino* hearing was held on January 25, 2021.

We turn to the sequence of events that occurred during the twenty-day appeal window from November 17 to December 7. It is this sequence of events that leads me to reverse and remand this case. On November 23, 2020, only six days after the Appeal Tribunal determination, Sharum visited the local DWS office to advise DWS that she was moving to a new address. During that visit, Sharum asked the DWS representative what to do about the November 17 determination that stated she must first file a regular state UI claim before filing a PUA claim. The DWS representative advised her to file a regular state UI claim. Sharum immediately filed a regular state UI claim. During that same November 23 DWS office visit, Sharum asked the DWS representative how to file an appeal of the November 17 Appeal Tribunal determination. The evidence in the record is unrefuted that the DWS representative told Sharum to give her the determination and that she would "image" the document and send it to the appeals department for her. Sharum complied and gave the DWS representative the November 17 determination for imaging and filing. This filing of the notice of appeal would have been well within the required twenty-day window.

Several days passed, and on December 19, 2020, Sharum noticed that her appeal from the November 17 Appeal Tribunal determination to the Board of Review had not

been docketed. Sharum went back to the local DWS office to inquire why her notice of appeal had not been filed as she was told on November 23. The record does not contain any reason why the DWS representative failed to send the timely notice of appeal to the Board of Review appeals department. By the time Sharum figured out that the DWS representative failed to file her notice of appeal, the twenty-day window had closed. Sharum filed a late notice of appeal, which is dated December 14, 2020.[4]

Because Sharum filed an untimely notice of appeal, the Board of Review subsequently held a *Paulino* hearing to determine whether Sharum's untimely notice of appeal was due to circumstances beyond her control. The Board of Review determined that the late notice was not due to circumstances beyond Sharum's control. I disagree. The record is clear that Sharum visited the local DWS office on November 23, 2020. It is documented that Sharum filed a claim for regular state UI benefits during that visit. It was uncontradicted that the DWS representative offered to image the November 17 determination and send it or file it with the appeal department of the Board of Review. Unknown to Sharum and for some unknown reason, the DWS representative failed to file the notice of appeal on November 23, which would have been timely. Because the DWS representative failed to file the notice of appeal, Sharum ultimately failed to file her notice of appeal timely. On these grounds, I would hold that Sharum's untimely filing of the

---

[4]I acknowledge that the date of the filing of the notice of appeal, December 14, is inconsistent with Sharum's testimony. However, whether Sharum filed the late notice of appeal on December 14 or 19 is of no concern since the twenty-day notice-of-appeal window had already expired on December 7.

notice of appeal was due to circumstances beyond her control, and I would remand to DWS to determine whether Sharum is entitled to PUA benefits.[5]

*Amanda Sharum*, pro se appellant.

*Cynthia L. Uhrynowycz*, Associate General Counsel, for appellee.

---

[5]During the intervening period prior to the *Paulino* hearing, Sharum received a determination from DWS that her claim for regular state UI benefits that she filed on November 23, 2020, had been denied. This determination would ostensibly entitle Sharum to be considered a "covered individual within the meaning of Section 2102(a)(3) of the CARES Act."