Cite as 2022 Ark. App. 222

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV
**No.** E-21-243

| | |
|---|---|
| KARA WRIGHT<br><br>APPELLANT<br><br>V.<br><br>DIRECTOR, ARKANSAS DEPARTMENT OF COMMERCE, DIVISION OF WORKFORCE SERVICES<br><br>APPELLEE | **Opinion Delivered** May 11, 2022<br><br>APPEAL FROM THE ARKANSAS BOARD OF REVIEW<br>[NO. 2021-BR-00452]<br><br><br><br>AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Kara Wright appeals the decision of the Arkansas Board of Review that dismissed the untimely appeal of her federal Pandemic Unemployment Assistance (PUA) claim from the Division of Workforce Services to the Appeal Tribunal based on the Board's finding that Wright failed to show that the late filing was due to circumstances beyond her control.[1]  We conclude that the Board's finding that the late filing was not due to circumstances beyond Wright's control was supported by substantial evidence, and we affirm.

---

[1]Appellant Kara Wright is sometimes referred to herein as "claimant," the Division of Workforce Services is sometimes referred to herein as "DWS," and the Arkansas Board of Review is sometimes referred to herein as "the Board."

The narrow, limited issue before the Board in its *Paulino* hearing[2] was whether Wright's late filing of her notice of appeal of her federal PUA claim to the Appeal Tribunal was due to circumstances beyond her control. It necessarily follows that the only issue before this court is whether the Board erred in determining that the late filing of the notice of appeal to the Appeal Tribunal was not due to circumstances beyond the control of the claimant.

Courts are often saddled with the task of interpreting rules or statutes that, unfortunately, could have been written more clearly. Our task in those instances is to interpret the rule or statute as written and not to rewrite the rule or statute to fit what we consider the rule or statute should state or contain. The task of rewriting the rule or statute is left to the originating legislative- or executive-branch agency or department. Such is the instance in the case at bar. The rules and statutes that govern the administration and enforcement of the federal PUA program could have been written more clearly, but our limited task herein is to interpret and apply these rules and statutes as written. If the originating legislative- or executive-branch agency or department deems it necessary to rewrite these rules and statutes, this court certainly stands as no obstacle.

While the only issue before this court—whether the Board of Review erred in determining that the late filing of the notice of appeal was not due to circumstances beyond the control of the claimant—may appear rather simple, the disposition of the issue requires

---

[2]In *Paulino v. Daniels*, 269 Ark. 676, 599 S.W.2d 760 (1980), the supreme court held that due process requires that the appellant be afforded a hearing to determine whether the late filing was due to circumstances beyond her control. This is commonly referred to as a *Paulino* hearing.

an extensive analysis of the State's unemployment-insurance-administration scheme as it relates to the federal PUA program.

The PUA is one of several different federal financial assistance programs that the United States Congress enacted to provide additional unemployment benefits to help individuals bridge financial hardships that the COVID-19 pandemic caused. *See* Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) (codified at 15 U.S.C. § 9021 to § 9034). Under the Act, the Secretary of Labor "shall provide to any covered individual unemployment benefit assistance while such individual is unemployed, partially employed, or unable to work for the weeks of such unemployment *with respect to which the individual is not entitled to any other employment compensation* . . . or waiting period credit." *Id*. § 2102(b) (emphasis added). A "covered individual" eligible to collect PUA benefits is an individual who (1) "*is not eligible for regular compensation* or extended benefits under State or Federal law or pandemic emergency unemployment compensation," *and* (2) self-certifies that she is "otherwise able to work and available for work within the meaning of applicable State law, except the individual is unemployed, partially unemployed, or unable or unavailable to work because" of one of the listed reasons related to the COVID-19 pandemic. *Id*. § 2102(a)(3)(A) (emphasis added). The PUA program extended economic assistance to people who lost work due to the pandemic but would not be eligible for regular unemployment-compensation benefits. *Soler v. Dir.*, 2022 Ark. App. 37.

As is evident from the foregoing, unemployment benefits from the State of Arkansas under its regular unemployment-insurance program and unemployment benefits from the

federal PUA program are mutually exclusive. A claimant cannot receive regular state unemployment benefits *and* federal PUA benefits. Before a claimant can receive federal PUA benefits, the State must first determine the claimant *ineligible* for regular state unemployment benefits

The federal PUA guidelines generally provide that each state shall use its existing state procedures for processing regular state unemployment claims to decide PUA claims. *See* U.S. Dep't of Labor, Emp. & Training Admin., Unemployment Insurance Program Letter No. 16-20, Attachment 1, at I-9, Unempl. Ins. Rep. (CCH) ¶ 22,460, 2020 WL 2146515 (April 5, 2020). Thus, the Arkansas Division of Workforce Services uses its existing state unemployment–insurance framework in determining a PUA claim. The threshold question in determining a federal PUA claim is whether the claimant is *ineligible* to receive regular state employment benefits. Depending on the particular circumstances of each claim, a claimant may or may not be required to first file a claim for regular state unemployment benefits before applying for federal PUA benefits. The U.S. Department of Labor issued Unemployment Insurance Program Letter No. 16-20 (The Federal Program Letter), which speaks to PUA eligibility and states in relevant part:

> In processing claims for PUA, states must verify that individuals have no regular UI entitlement. If the individual is not eligible for regular UI because there are insufficient covered wages or the individual has an active UI claim with a definite or indefinite disqualification, then a state does not need to require the individual to file a regular UI initial claim.
>
> . . . .
>
> If the individual's eligibility for regular UI is *questionable* (for example, there are wages in the base period but no claim is filed, or *a job separation that has not been adjudicated*), then the state *must first require* the individual to file a regular UI initial claim. If the

4

individual is *subsequently disqualified*, *then* the state may consider the individual for PUA eligibility.

U.S. Dep't of Labor, Emp. & Training Admin., Unemployment Insurance Program Letter No. 16–20, Attachment 1, at I-9, Unempl. Ins. Rep. (CCH) ¶ 22,460, 2020 WL 2146515 (April 5, 2020) (emphasis added).

While the excerpt from the above quoted PUA Federal Program Letter may contain terms with which we are not familiar, the overall scheme of ineligibility of state regular unemployment benefits as a condition precedent for eligibility for federal PUA benefits resonates clearly through the federal guidance. In general terms, the PUA guidelines provide that if the claimant is clearly ineligible for regular state unemployment benefits from the documents presented to DWS, then a PUA claimant is not required to file a regular state unemployment claim. However, if the claimant's eligibility for regular state unemployment benefits is "questionable,"[3] then the PUA claimant must first file a claim for regular state benefits and, of vital importance to our analysis in the case at bar, "[if] the individual is *subsequently disqualified* [for state unemployment benefits] *then* the state may consider the individual for PUA eligibility." The administrative sequence of events is clear. If a federal PUA claim involves a *questionable* regular state unemployment claim, the State must first determine that the claimant is *ineligible* for regular state unemployment benefits; *then*, the State may consider and determine whether the claimant is *eligible* for federal PUA

---

[3]While the PUA guidelines do not define "questionable claim," there are two examples of questionable claims provided in the Federal Program Letter. The two examples are where there are wages in the base period but no claim is filed, or a job separation that has not been adjudicated. These two examples are illustrative only and not exhaustive. The second example in the Federal Program Letter—"a job separation that has not been adjudicated"—becomes pertinent in the case at bar.

unemployment benefits. As will be discussed, *infra*, appellant Wright's claim for regular state unemployment benefits herein can *unquestionably* be characterized as *questionable*, and even the dissent agrees with this characterization. When Wright filed her *questionable* claim for regular state unemployment benefits, she also filed a claim for federal PUA benefits. This caused her regular state unemployment claim *and* her federal PUA benefits claim to proceed *simultaneously—but separately*—through the unemployment insurance administrative proceedings. It is this simultaneous bilateral matriculation of the regular state unemployment claim *and* the federal PUA claim through the unemployment insurance administrative proceedings that is the source of the confusion in this case. We now turn to the claim.[4]

Wright was employed as a nurse for Vista Health. Vista Health is a smoke-free, alcohol-free, and drug-free campus. On May 11, 2020, a fellow employee witnessed a bottle of alcohol in Wright's vehicle while the vehicle was parked on the employer's campus and reported it to the employer. On May 12, 2020, Vista Health terminated Wright for misconduct for violating company policy.

On July 2, 2020, Wright filed a claim for regular state unemployment benefits. The employer, Vista Health, responded and denied the claim, alleging that Wright was discharged for misconduct in the connection with the work.[5] Since Wright alleged she was

---

[4]We note that the disposition of Wright's claim for regular state unemployment benefits is not at issue in this appeal. Our review, therefore, is limited to the dismissal of Wright's federal PUA claim.

[5]We make no comment on the merits of the regular unemployment claim other than to state that this claim was controverted by the employer and had yet to be administratively adjudicated when Wright filed for PUA benefits.

entitled to regular state unemployment-insurance benefits and the employer denied the claim, alleging that Wright was terminated for misconduct, the character of Wright's state claim became *questionable* according to the PUA guidelines and the Federal Program Letter. Instead of waiting for her *questionable* regular state unemployment claim to be administratively processed through the system and state benefits either awarded or denied, Wright simultaneously filed a separate claim for federal PUA benefits. As explained above, these two types of claims are mutually exclusive. Wright's two unemployment claims (the *questionable* regular state claim and the Federal PUA claim) were administered and processed separately and given different internal claim numbers by DWS. Each separate claim proceeded through the administrative proceedings at its own pace.

As one might anticipate, the administrative determinations on these two separate claims were issued on separate dates.[6] On July 24, 2020, DWS issued a determination in the federal PUA claim. At that time, DWS had not yet made its determination in Wright's *questionable* regular state unemployment claim. In other words, DWS had not yet determined whether Wright was ineligible for regular state unemployment benefits, which was a condition precedent for federal PUA eligibility. As such, DWS issued a notice of determination of entitlement in the federal PUA claim that found that Wright was not eligible for PUA benefits because she was not a "covered individual within the meaning of Section 2102(a)(3) of the CARES Act." The adverse PUA determination informed Wright in writing that she had the right to appeal the decision to the Appeal Tribunal within twenty

---

[6]For sake of clarity, the Division of Workforce Service issues "Determinations." The Arkansas Appeal Tribunal and the Board of Review issue "Decisions."

days as prescribed by Ark. Code Ann. § 11–10–524(a)(1) (Supp. 2021). It is undisputed that Wright did not timely appeal the PUA determination to the Appeal Tribunal.

Two months later, on September 25, 2020, DWS issued a determination regarding Wright's *questionable* regular state unemployment claim. DWS issued a notice of agency determination that found that Wright was disqualified for regular unemployment benefits pursuant to Ark. Code Ann. § 11–10–514(a)(1) (Supp. 2021) because she was discharged for misconduct in connection with the work.

On October 6, 2020, Wright filed a notice of appeal to the Appeal Tribunal from both the July 24, 2020, determination of her federal PUA claim and the September 25, 2020, determination of her *questionable* regular state unemployment claim. Wright's appeal from the *questionable* regular state unemployment claim was timely because it was filed within twenty days of that determination. However, because Wright did not file her notice of appeal from the federal PUA determination within twenty days of the issuance of the PUA determination, her federal PUA notice of appeal was untimely.

When a claimant fails to timely file a notice of appeal to the Appeal Tribunal (or the Board of Review), the claimant is entitled to a hearing to decide whether the filing was untimely due to circumstances beyond the control of the claimant. Arkansas Code Annotated section 11–10–524(a)(2) provides, "However, if it is determined by the appeal tribunal or the Board of Review that the appeal is not perfected within the twenty-calendar–day period as a result of circumstances beyond the appellant's control, the appeal may be considered as having been filed timely." In *Paulino v. Daniels*, 269 Ark. 676, 599 S.W.2d 760 (1980), the supreme court held that due process requires that the appellant be afforded

a hearing to determine whether the late filing was due to circumstances beyond her control. This hearing is commonly referred to as a "*Paulino* hearing."

A hearing was held on January 15, 2021. For the convenience of the claimant, the Appeal Tribunal combined the appeal hearing for the *questionable* regular state misconduct claim with the *Paulino* hearing for the federal PUA claim. With respect to the *questionable* regular state unemployment claim, Wright gave testimony explaining why she disagreed that her termination was for misconduct connected with the work. The record does not reflect the resolution of Wright's *questionable* regular state unemployment claim, and as previously noted, her *questionable* regular state unemployment claim is not at issue in this appeal. With respect to the federal PUA claim, Wright gave testimony on the issue of whether her failure to timely appeal was due to circumstances beyond her control. Wright gave testimony regarding the reason for her untimely appeal of the federal PUA determination.[7] The following exchange occurred:

> HEARING OFFICER: So, can you explain why you waited after the twenty days to file your [federal PUA] appeal?
>
> CLAIMANT: I did because I was instructed to file for regular unemployment and await that determination before proceeding with a pandemic claim.
>
> . . . .
>
> I had already been denied the PUA for two reasons according to the correspondence. I was denied that, but I was instructed to await my regular unemployment determination before I could proceed.
>
> . . . .

[7]Wright's testimony regarding the merits of her appeal for misconduct is not relevant to this appeal.

9

[T]hat's all I could do was file my regular unemployment and wait for that determination before I could proceed with my pandemic claim.

. . . .

I was told that the regular unemployment determination had to be determined before I could do anything with the pandemic route.

. . . .

That's why I appealed both at the same time. I appealed them both because I couldn't proceed without the regular unemployment determination.

On January 20, 2020, the Appeal Tribunal issued a written decision dismissing Wright's federal PUA appeal, finding that Wright's waiting for the determination of her independent *questionable* regular state unemployment claim was not good cause for the late filing of her PUA notice of appeal. Wright timely appealed the Appeal Tribunal's decision to the Board of Review.

The only issue before the Board of Review was whether Wright's late filing of her notice of appeal of her federal PUA claim to the Appeal Tribunal was due to circumstances beyond her control. That is the sole issue in a *Paulino* hearing. Here, after reviewing the testimony and the agency record, the Board of Review found in pertinent part:

The record contains a copy of the Notice of Determination of Entitlement that was mailed to the claimant on July 24, 2020. The determination contains language advising that a party entitled to notice may file an appeal within 20 calendar days after the mailing of the notice to the last known address. As the Notice of Determination of Entitlement was mailed to the claimant on July 24, 2020, the claimant had until August 13, 2020, to file an appeal. However, the claimant's appeal was not filed until October 6, 2020.

. . . .

10

The claimant testified that she was instructed to wait for a Notice of Agency Determination [for her regular state unemployment claim] before filing an appeal of the Notice of Determination of Entitlement [for her PUA claim].

. . . .

The Board of Review finds that the claimant's appeal to the Appeal Tribunal was filed in an untimely manner and that the claimant has failed to show that the late filing was due to circumstances beyond her control. The claimant thought she needed a Notice of Agency Determination [for her regular state unemployment claim] before filing an appeal from the Notice of Determination of Entitlement [for her PUA claim]. While the claimant may have thought she needed such documentation to appeal, she did not provide information to support such a conclusion.

. . . .

The Board of Review affirms the Appeal Tribunal decision [dismissing Wright's PUA appeal].

Before reviewing the Board's decision that emanated from the *Paulino* hearing, we first address the dissent's concern that a *Paulino* hearing, as used in regular state unemployment cases, is inadequate to protect the due-process rights of a claimant in a federal PUA case. In a recent case involving a federal PUA claim, *Sharum v. Director*, 2022 Ark. App. 96, ___ S.W.3d ___, the opinion coined the phrase "the *Paulino* vortex" to describe this perceived inadequacy. For the following reasons, we conclude that a *Paulino* hearing is entirely appropriate and, in fact, necessary in a federal PUA case where the untimeliness of an appeal is at issue.

As we have previously stated, the federal PUA guidelines generally provide that each state shall use its existing state procedures for processing regular state unemployment claims to decide federal PUA claims. This is because the federal government did not design an adjudication system for PUA claims; rather, the states were allowed to utilize their own

existing unemployment-insurance administrative systems.  Pursuant to that directive, Arkansas elected to administer the federal PUA claims using its existing state unemployment-insurance procedures.  The U.S. Department of Labor Unemployment Insurance Program Letter No. 16-20 specifically provides, with respect to appeals and hearings:

> Applicable state law.  To ensure that appeals and hearings are held promptly, the applicable state law provisions concerning the right of appeal and fair hearing from a determination or redetermination of entitlement to regular compensation shall apply to determinations and redeterminations of eligibility for or entitlement to PUA.

U.S. Dep't of Labor, Emp. & Training Admin., Unemployment Insurance Program Letter No. 16-20, Attachment 1, at I-12, Unempl. Ins. Rep. (CCH) ¶ 22,460, 2020 WL 2146515 (April 5, 2020).

To that end, within the existing Arkansas unemployment-insurance statutory scheme, there is a specific statute, Ark. Code Ann. § 11-10-524(a)(2), which provides that if an appeal to the Appeal Tribunal is untimely filed, the appeal may nonetheless be considered timely if the Board of Review finds that the untimely filing is a result of circumstances beyond the appellant's control.  And in *Paulino*, *supra*, our supreme court held that due process requires a hearing to determine whether the late filing was due to circumstances beyond the appellant's control.  Thus, a *Paulino* hearing is a necessary component within the administrative scheme of the DWS and the Board of Review to protect the due-process rights of a claimant who has filed an untimely appeal from an adverse determination below.  And, just as in regular state claims for unemployment insurance, a *Paulino* hearing is appropriate and, in fact, necessary to determine whether an untimely PUA appeal should be allowed to proceed.  Here, Wright was afforded the required *Paulino*

12

hearing, and our charge is to decide whether, based on the record, the Board erred in its finding that the untimely filing of her notice of appeal was not due to circumstances beyond Wright's control.

Board decisions are upheld if they are supported by substantial evidence. *Robinson v. Dir.*, 2021 Ark. App. 485, 638 S.W.3d 29. Substantial evidence is such relevant evidence that reasonable minds might accept as adequate to support a conclusion. *Id.* In appeals of unemployment-compensation cases, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. *Id.* Even if there is evidence that could support a different decision, our review is limited to whether the Board could have reasonably reached its decision as a result of the evidence presented. *Id.*

The Arkansas Supreme Court addressed the standard of judicial review of decisions of administrative agencies in *Singleton v. Smith*, 289 Ark. 577, 580, 715 S.W.2d 437, 439 (1986):

> An administrative agency, like a jury, is free to believe or disbelieve any witness. . . . We give the evidence its strongest probative force to support the administrative decision. . . . To establish an absence of substantial evidence to support the decision the appellant must demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded men could not reach its conclusion.

(quoting *Williams v. Dir.*, 278 Ark. 453, 647 S.W.2d 115 (1983)). Applying these standards, we conclude that there was substantial evidence to support the Board's finding that Wright's appeal to the Appeal Tribunal was filed in an untimely manner and that Wright failed to show that the late filing was due to circumstances beyond her control.

In its federal PUA determination, DWS found that Wright was not eligible for PUA benefits because she was not a covered individual within the meaning of Section 2102(a)(3)

13

of the CARES Act. Again, at the time that this federal PUA determination was issued, the State had not yet answered the threshold question of whether Wright was ineligible for regular state unemployment-insurance benefits. At the top of the notice of determination for her federal PUA claim is the option to indicate whether this determination is "initial" or "amended," and the "initial" box is marked.[8] More importantly, the section of the determination entitled "Appeal Rights" plainly states that the claimant has twenty days to file an appeal with the Appeal Tribunal. To lessen the burden on the claimant and make the filing of the notice of appeal more convenient, the determination gives the claimant three options to submit the notice of appeal. The notice provides that an appeal may be filed by either completing a written appeal form, which may be obtained from any DWS office; completing a written form, which is available online at the DWS website; or by writing the Arkansas Appeal Tribunal at P.O. Box 8013, Little Rock, Arkansas, 72203. The Appeal Rights section even warns the claimant to "continue to file weekly claims to protect your benefit rights." Simply put, if Wright had filed a notice of appeal within twenty days of the issuance of the federal PUA determination and continued to file weekly claims as set forth in the determination, the appellant's rights to claim federal PUA benefits would have been protected. There is nothing ambiguous in the Appeal Rights section in the PUA determination, which granted Wright the clear right to appeal and the instructions on how to do so.

---

[8]This implies that the determination may be amended by submission of further information, i.e., perhaps a determination that the claimant has been subsequently ruled *ineligible* for regular state unemployment-insurance benefits.

Wright contends that her late filing was a result of being told by local DWS personnel that she could not proceed in the federal PUA case before a determination was made on her regular state unemployment-benefits claim. However, we hold that substantial evidence supports the Board's finding that this communication did not constitute circumstances beyond Wright's control such to justify her untimely appeal in her federal PUA claim, especially in light of the unambiguous Appeal Rights section in the PUA determination. Because Wright had simultaneously filed both a *questionable* regular state unemployment-benefits claim and a federal PUA claim, the DWS communication was not incorrect. The federal PUA Program Letter guidance referred to above clearly states: "In processing claims for PUA, states must verify that individuals have no regular UI entitlement." As we have explained, the State had the responsibility to determine that Wright was ineligible for regular state unemployment benefits before it could proceed to determine whether Wright was eligible for federal PUA benefits.

Furthermore, we believe it is prudent to offer the additional explanation that, were we to adopt the dissenting view and reverse the Board's decision, the decision would have significant practical and legal consequences in the unemployment-insurance administrative scheme. The immediate impact would be that where a local DWS representative "tells the claimant something," and then the claimant files an untimely notice of appeal, the self-serving statement of the claimant would constitute in and of itself "circumstances beyond the control" of the claimant in a *Paulino* hearing. In the future, in any *Paulino* hearing, all a claimant would have to do to overturn a determination based on an untimely notice of appeal is to testify that an unknown and unidentified DWS representative "told me to wait

15

and that is why I filed an untimely appeal." Such a statement would arguably constitute circumstances beyond the control of the claimant, and to that, we cannot agree. Wright was informed unambiguously in writing of her appeal rights in the federal PUA determination, and she chose not to timely appeal. On this record, we affirm the Board's finding that the untimely appeal was not due to circumstances beyond her control.

Before concluding this opinion and to avoid confusion in the future, we must address the opinions in *Sharum*, *supra*, and *Bennett v. Director*, 2022 Ark. App. 129. In *Sharum*, an allegation similar to the one in this case was made, i.e., that the late filing was a result of misinformation the claimant received from local DWS personnel, despite being informed in writing of her right to appeal. The Board decided that the late filing of the notice of appeal was not due to circumstances beyond the control of the claimant and dismissed the PUA claim. On appeal, our court reversed the Board's decision that the late filing was not due to circumstances beyond the claimant's control and remanded for a consideration of the claimant's federal PUA claim.[9] The *Sharum* opinion was followed by *Bennett*, *supra*, where this court reversed and remanded and wrote:

> We have recently addressed the discrepancies and confusion surrounding the timelines of filing appeals in light of a PUA determination versus other unemployment claims. *See Sharum v. Ark. Dep't of Com.*, 2022 Ark. App. 96, ___ S.W.3d ___. For the reasons outlined in *Sharum*, we hold that the Board erred in finding that the lateness of Bennett's appeal was not due to circumstances beyond his control.

*Bennett*, 2022 Ark. App. 129, at 2–3. To the extent that *Sharum* and *Bennett* conflict with our holding herein, those cases are overruled.

---

[9]There was also a concurring opinion in *Sharum*, wherein the concurring judge disagreed with the majority's reasoning but reversed on an alternate basis.

16

Our task in the limited review in this case is not to reinvent the wheel or create a new scheme for the adjudication of federal PUA claims or state regular unemployment-insurance claims, but only to review whether the untimely notice of appeal in the federal PUA claim was due to circumstances beyond the control of the claimant. As we stated earlier in this opinion, if the legislature, agency, or department that drafted this administrative scheme desires to change or modify the content, this court stands as no obstacle. However, here, the claimant's failure to timely file the notice of appeal was not due to circumstances beyond her control, and for that reason, we affirm the Board's dismissal of her untimely appeal.[10]

Affirmed.

KLAPPENBACH, BARRETT, and BROWN, JJ., agree.

HARRISON, C.J., and ABRAMSON, J., dissent.

**BRANDON J. HARRISON, Chief Judge, dissenting**. I respectfully dissent from the majority opinion's analysis and result.

Nurse Kara Wright challenges a determination by the Arkansas Board of Review that her untimely appeal for Pandemic Unemployment Assistance (PUA) was due to a circumstance that she could control. In doing so, the Board affirmed and adopted the Appeal Tribunal's decision that denied Wright PUA benefits. The Appeal Tribunal's legal reason for denying PUA benefits was this: "because [Wright] was waiting for the determination for her regular UI benefits claim . . . her appeal was filed untimely." PUA

---

[10]We express no opinion on whether the claimant herein may file an amended claim for federal PUA benefits, nor do we express any opinion on whether such a claim might have merit.

is one of the federal financial assistance programs that the United States Congress enacted to provide additional unemployment benefits to help individuals bridge financial hardships that the COVID-19 pandemic caused. *See* Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) (codified at 15 U.S.C. § 9021 to § 9034).

In her petition to this court, Wright asserts that she filed for regular state unemployment (UI) benefits and federal PUA benefits in July 2020. On 24 July 2020, Wright received a notice of determination of entitlement that she was not a "covered individual" under the CARES Act. That meant she was ineligible for PUA benefits. Wright argues that she appealed the adverse PUA determination to the Appeal Tribunal— but "not in a timely manner because [she] was instructed to await the determination for [her] regular UI claim." She says that "ADWS was swamped and information/processes was still unfolding" and that Division personnel said that she must wait for a regular UI determination before she could move on her PUA claim. She argues that waiting for her regular UI determination was the reason that her PUA appeal was untimely, and it all was a circumstance that she could not control. *Paulino v. Daniels*, 269 Ark. 676, 599 S.W.2d 760 (Ark. Ct. App. 1980). I agree with Wright and would reverse the Board of Review's decision and remand the case.

## I. *Facts*

On 12 May 2020, Vista Health discharged Wright from her job for violating a company rule or policy. On 2 July 2020, Wright filed a claim for UI benefits and contested her employer's discharge. While her claim for state benefits was pending, Wright filed an

18

initial claim for federal PUA benefits on July 17. On July 24, the Division mailed a notice of determination of entitlement to Wright. That paper told her that she was not eligible for PUA because she was not a "covered individual" within the meaning of section 2103(a)(3) of the CARES Act. No further detail or legal reasoning was given.

On 25 September 2020, Wright received an initial determination about her claim for UI benefits, which was denied. The September 25 notice of agency determination explained that Wright was disqualified from UI benefits because of misconduct. *See* Ark. Code Ann. § 11-10-514(a) (Supp. 2021) (misconduct provision).

On 6 October 2020, Wright appealed the Division's September 25 denial of her regular UI state claim and the July 24 denial of her federal PUA claim. On 15 January 2021, the Appeal Tribunal held a hearing on Wright's state and federal claims. Wright testified that the Division personnel told her that she had to wait for her UI claim to be determined before she could proceed with her PUA claim. In her words, "I was told that the regular unemployment determination had to be determined before I could do anything with the pandemic route." Wright said the Division personnel's instruction is why she waited to appeal the PUA decision until her state claim had been decided. No witness or document rebutted her testimony.

On 20 January 2021, the Appeal Tribunal issued a written decision dismissing Wright's appeal of the July 24 PUA determination. It found that Wright's waiting for the determination of her regular UI benefit claim was not good cause for her late PUA appeal because her waiting was a circumstance within her control. Wright timely appealed the

19

Appeal Tribunal's adverse decision to the Board of Review, and the Board of Review's adverse decision to this court.[1]

## II. *Analysis*

Wright's administrative appeal of her PUA claim was not filed within twenty days of the Division's July 24 denial. The sole issue here is whether the tardy appeal was due to a circumstance beyond her control.[2]

This court applies a de novo standard of review to administrative agencies' interpretations of statutes. *See Sharum v. Dir.*, 2022 Ark. App. 96, __ S.W.3d __; *see also Myers v. Yamato Kogyo Co., Ltd.*, 2020 Ark. 135, 597 S.W.3d 613. Under the CARES Act, the United States Secretary of Labor "shall provide to any covered individual unemployment benefit assistance while such individual is unemployed, partially employed, or unable to work for the weeks of such unemployment with respect to which the individual is *not entitled to any other employment compensation*[.]" 15 U.S.C. § 9021(b) (emphasis added).

When Wright applied for PUA benefits on July 17, her eligibility for "other employment compensation"—that is, regular state UI benefits—was "questionable" because

---

[1]Wright has not appealed the Appeal Tribunal's decision that she was fired for misconduct. This is true although the Appeal Tribunal received testimony related to Wright's state UI claim (in case No. 2020-AT-13724) when it received testimony about the federal PUA claim at issue this case (case No. 2020-AT-13726). I express no opinion on the merit of her state unemployment claim.

[2]Appeals from Division of Workforce Services decisions are timely if the Division receives the appeal within twenty calendar days from the date the adverse decision was mailed to a claimant. Ark. Code Ann. § 11-10-524(a)(1) (Supp. 2021). Alternatively, an appeal is timely when it is postmarked within the twenty-day period. Tardy appeals may be considered timely if the delay was due to circumstances beyond the claimant's control. *Paulino*, 269 Ark. 676, 599 S.W.2d 760; *see also* Ark. Code Ann. § 11-10-524(a)(2) (codifying *Paulino*).

20

she had a job separation that had not yet been adjudicated. *See* Dep't of Labor, Unemployment Insurance Program Letter No. 16-20, Unempl. Ins. Rep. (CCH) ¶ 22,458, 2020 WL 2146515 (April 5, 2020); *see also Sharum, supra.* The reason why Wright's separation from her employer had to be administratively adjudicated first, in this case, is because the CARES Act requires that states have a process for determining whether a PUA applicant is ineligible for regular UI benefits. In other words, if Wright can get regular state UI benefits, then she cannot also be a "covered individual" who is eligible to collect PUA benefits. *See* 15 U.S.C. § 9021(a)(3)(A). It is an either/or game: a claimant *cannot simultaneously* collect state unemployment and PUA benefits.

Wright, however, did not learn that she was ineligible for state UI benefits until 25 September 2020—a date that arrived long after the twenty-day deadline to appeal the Division's earlier PUA decision had passed. This scenario was recently termed the "*Paulino* vortex" because once a claimant has pursued the two-track benefits systems (state UI and federal PUA), the state claim process very often sets the federal claim process up for failure for reasons that the claimant cannot often control. *Sharum, supra*; *see also Bennett v. Dir.*, 2022 Ark. App. 129. Why? Because agency appeal deadlines that have historically applied to the state UI benefits system were created before the dual system of benefits (state and federal claims) arose. And the dual system arose only after COVID-19 appeared and Congress enacted a federal-benefits program to aid qualifying claimants.

The bottom line is that absent some written directive or testimony to the contrary, Wright reasonably relied on the directions that Division personnel gave her regarding how to cross the intersection where federal PUA and state UI benefits meet. *Id*. A claimant like

21

Wright can neither control the advice that Division personnel provide nor dictate how the Division of Workforce Services' appeal tribunals interpret and apply the laws in this context.

★ ★ ★

The majority opinion sanctions a confusing, misleading, and contradictory approach the Board of Review has taken in this case (and other ones). Like Sharum and Bennett before her, Wright's untimely appeal of the July 24 PUA determination should be excused because her tardiness was not "within her control," if that phrase is to have any practical meaning. *See Sharum*, *supra*; *Bennett*, *supra*.

Furthermore, Wright's disqualification from state UI benefits does not automatically mean that she cannot be a covered individual for PUA purposes—if her separation from the relevant employment directly resulted from the COVID-19 pandemic. *See Soler v. Dir.*, 2022 Ark. App. 37. This case should be reversed and remanded with directions that the Board of Review reconsider Wright's PUA claim on its merit.

ABRAMSON, J., joins.

*Kara B. Wright*, pro se appellant.

*Cynthia L. Uhrynowycz*, Associate General Counsel, for appellee.

22